**RAYCO MANUFACTURING COMPANY, Plaintiff,**

**v.**

**CHICOPEE MANUFACTURING CORPORATION, Defendant.**

United States District Court
S. D. New York.
Jan. 22, 1957.

S. Stephen Baker, New York City, for plaintiff, William E. Woods and Burton B. Wiener, New York City, of counsel.

Morgan, Finnegan, Durham & Pine, New York City, for defendant, Granville M. Pine, and John D. Foley, New York City, William D. Denson, Washington, D. C., of counsel.

PALMIERI, District Judge.

Rayco Manufacturing Company (Rayco) and Chicopee Manufacturing Corporation (Chicopee) are involved in a contest concerning the validity and effect of two patents held by Chicopee for puffed plastic fabrics. The present motions were brought on by each party to fix the litigation, presently in three different federal courts, in the circuit respectively thought to be most convenient.

Litigation began with two suits brought on August 8, 1956, by Chicopee in the Eastern District of Virginia: one against the Virginia Fiber Corporation, apparently a competitor of both Rayco and Chicopee, and the other against Rayco of Arlington Boulevard Inc., a franchised dealer of Rayco. Chicopee's affidavits indicate that these two suits have been consolidated. The next step was taken by Rayco. On August 15, 1956, it filed a suit in the Southern District of New York for a declaratory judgment that Chicopee's patents were invalid and that Rayco did not infringe. Chicopee and Rayco then began a series of maneuvers by motions with a view toward fixing the litigation in one of these two circuits, Chicopee moving to dismiss Rayco's suit or, in the alternative, to transfer it to Virginia, and Ray-

co moving to enjoin proceedings taken or to be taken by Chicopee. Before these motions were heard, Chicopee instituted step three in the contest. On November 23 or 26, 1956 (the affidavits set forth both dates), it filed a suit charging infringement in the District of New Jersey against Hy-Grade Woven Plastics Inc. (Hy-Grade), a company which manufactures the controversial puffed plastic fabric and sells it only to Rayco. Immediately thereafter, Chicopee amended its prior motion to dismiss or to transfer the New York suit to Virginia by adding a motion to transfer the former suit to New Jersey. Rayco also opposed this motion and brought on an additional motion of its own to enjoin Chicopee from prosecuting the New Jersey suit against Hy-Grade and from harassing Rayco's customers by threatening or commencing suits. Furthermore, Hy-Grade, through Rayco's attorney, moved to intervene in the declaratory judgment action in the Southern District. On oral argument, Chicopee withdrew its motion to transfer to Virginia, so that the choice remaining, if one is to be made, is between the Southern District of New York and the District of New Jersey.

I turn first to Chicopee's motion to dismiss Rayco's suit on the ground that the Southern District lacks personal jurisdiction of the defendant. Specifically, Chicopee contends that it was not incorporated in New York and that it does not do business in New York. The corporation served, it says, was Chicopee Mills, Inc., (Mills) a wholly owned, but completely independent, New York subsidiary of Chicopee.

Chicopee is a Massachusetts corporation with its principal place of business at New Brunswick, New Jersey. Its only contacts with New York are through its subsidiary, Mills, which is a New York corporation qualified to do business in New York, and has a large office in New York City where the parent's goods are displayed. Mills' function is to act as a selling agent for commissions on sales made, mostly for Chicopee but for other concerns as well. Ninety-five per cent of the parent's business, amounting to approximately 25 million dollars a year, originates with the subsidiary. Mills, however, does not sell Chicopee's goods; it merely solicits customers, the orders of whom must be accepted by Chicopee. Any complaints or returns of goods sold are sent directly to Chicopee or forwarded through Mills. Invoices are made out under a Chicopee letterhead with merely a reference to Mills as the selling agent, and payments are made, not to Mills, but to Chicopee. These are sent to a Post Office box kept by Chicopee in New York. The parent also has a bank account in New York City.

Venue is proper in the Southern District if these facts indicate that Chicopee was doing business within the provisions of 28 U.S.C. § 1391(c) (1952).[1] Despite the frequency with which this issue is determined by the courts, there is no, and probably can be no authoritative standard for deciding it. It seems, however, that the federal courts have applied the doctrine of International Shoe Co. v. State of Washington[2] (which decided how much personal jurisdiction a state could assume without violating due process) to federal jurisdiction and have felt themselves satisfied if they found minimum contacts and no imbalance of equities against the defendant.[3] Furthermore, there seems to be a growing tendency to make the determination de-

---

1. Section 1391(c) reads as follows:
   "§ 1391. Venue generally
   \*    \*    \*    \*    \*
   "(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

2. 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

3. See, e. g., United States v. Scophony Corp. of America, 1948, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2d Cir., 175 F.2d 184, certiorari denied, 1949, 338 U.S. 867, 70 S.Ct. 141, 94 L. Ed. 531; Note, Doing Business as a Test of Venue and Jurisdiction over Foreign Corporations in the Federal Courts, 56 Col.L.Rev. 394, 404-406 (1956). But cf. Polizzi v. Cowles Magazines, Inc., 1953, 345 U.S. 663, 73 S.Ct. 400, 97 L.Ed.

pend only on the existence of minimum contacts;[4] any assessment of convenience and fairness that may be necessary can be made with a view to invoking the transfer provision of 28 U.S.C. § 1404 (a) (1952).[5] This development, it would seem, takes advantage of the flexible scheme provided by the Judiciary Code for insuring litigants prompt access to the courts. Increasingly, it is felt that questions of personal jurisdiction do not challenge the power of the federal courts; they merely are awkward means of determining which federal court is the proper one.[6]

Using this guide, I find no trouble in concluding that Chicopee is amenable to suit in the Southern District of New York. The volume of its sales in this District, the presence in this District of a Post Office box in which it receives payments for goods sold, and its bank account in this District constitute sufficient contacts to make Chicopee answerable to the process of this court. · It is of no moment that service was made on a Vice-President of its independent subsidiary,[6a] who was also a Director of the parent, Chicopee. This is not a case where the parent sells goods to the subsidiary which in turn sells the goods to others. Perhaps in the latter situation the law is justified in not holding the parent answerable to service made on the subsidiary.[6b] Mills, however, is but a sales agent and, as such, is the extension of Chicopee into this District by which the latter makes its sales. If such an arrangement could immunize Chicopee, every case that found jurisdiction from extended solicitation in a District would have been wrongly decided.

It should be noted, however, that this suit does not arise directly from Chicopee's or Mill's activities in the Southern District.[7] Since Rayco, which also is a New Jersey corporation and regularly engaged in business in that state, has even fewer contacts with the Southern District with respect to this litigation than does Chicopee, an interesting question arises as to why suit was brought in this District. I turn now to consider this point.[7a] Rayco, in its affidavits and briefs filed in opposition to Chicopee's motion to transfer, advances the usual reasons for its exercise of choice of venue: Although its incorporation and principal place of business are in New Jersey, it is just as convenient for it to

1331 (suggestion that test of § 1391(c) might be more stringent than a state test).

4. E. g., French v. Gibbs Corp., 2 Cir., 1951, 189 F.2d 787 (" * * * continuous activities, be they as little as one will, satisfy the necessity of that physical 'presence' on which jurisdiction depends * * *" at page 789); Latimer v. S/A Industrias Reunidas F. Matarazzo, supra; Satterfield v. Lehigh Valley Ry. Co., D.C. S.D.N.Y.1955, 128 F.Supp. 669.

5. Cf. Polizzi v. Cowles Magazines, Inc., supra, 345 U.S. at page 667, 73 S.Ct. at page 903, dissenting opinion of Justices Black and Jackson; Scholnik v. National Airlines, Inc., 6th Cir., 219 F.2d 115, certiorari denied 1955, 349 U.S. 956, 75 S.Ct. 882, 99 L.Ed. 1280; Latimer v. S/A Industrias Reunidas F. Matarazzo, supra; Kenny v. Alaska Airlines, Inc., D.C.S.D. Cal.1955, 132 F.Supp. 838, 854. Section 1404(a) is set out in footnote 7a, infra.

6. Ibid; see also Lone Star Package Car Co. v. Baltimore & Ohio Ry. Co., 5 Cir., 1954, 212 F.2d 147, 154–55. But cf.

Polizzi v. Cowles Magazines, Inc., supra, 345 U.S. at page 672, 73 S.Ct. at page 905 dissenting opinion of Burton, J.

6a. See cases cited in note 4, supra.

6b. See Berkman v. Ann Lewis Shops, Inc., D.C.S.D.N.Y.1956, 142 F.Supp. 417; Note, 56 Col.L.Rev. 394, 409–410 (1956); cf. Latimer v. S/A Industrias Reunidas F. Matarazzo, supra; United States v. Watchmakers of Switzerland Information Center, D.C.S.D.N.Y.1955, 133 F. Supp. 40, 48.

7. Unless it can be said that Rayco's desire to protect its extensive sales through franchised dealers in New York City gave cause to its action.

7a. This point is brought up by the cross-motions to enjoin proceedings in other courts and to transfer. The latter is governed by 28 U.S.C. § 1404(a) (1952), which reads as follows:
"§ 1404. Change of venue
"(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

litigate in the Southern District, in fact, more so for it retains New York counsel; its records are in New York; and certain prior use witnesses whom it cannot command are New York residents. In addition, it alleges that Chicopee's patents were prosecuted from New York and that the latter's records are with its New York counsel. And as a further argument for sustaining its choice of venue, Rayco thrusts the epithet of "forum shopping" against Chicopee.

■ All this may be true and yet I feel that the real reason for Rayco's coming into New York has been left unsaid, and for apparent reasons. There appears to be a general attitude among the patent bar that the Second Circuit is most uncharitable to patents.[8] Consequently, a party desiring to have a patent declared invalid will probably seek to sue here, while a party suing to enforce its patent in an infringement suit will probably bring it elsewhere, even to the point of suing a customer of the infringer instead of the direct infringer.[9] These tactics are plainly evident from the federal reports[10] and have been recognized by the Supreme Court.[11] Generally, priority has been given to the swiftest;[12] contending parties have been known to initiate infringement or declaratory judgment suits minutes after a patent grant by the Patent Office.[13]

■ I find these tactics deplorable. That the issuance of a patent should be tantamount to the blowing of a starter's whistle in a foot race among patent counsel is indeed a lamentable spectacle. I believe that a litigant, whether a swift

8. See Seidel, Venue in Patent Litigation, 22 Geo.Wash.L.Rev. 682 (1954); Lang & Thomas, Disposition of Patent Cases by Courts During the Period 1939–1949, 32 J.Pat.Off.Soc'y 803 (1950). The statistical breakdown by circuits in the Lang & Thomas article indicates that between 1945 and 1949 patents were held protected in 7 per cent of the Second Circuit opinions, in 16.5 per cent of the Third Circuit opinions, and in 25 per cent of the Fourth Circuit opinions. The present validity of these figures is an interesting question, especially after the 1952 patent codification and the Second Circuit opinion of Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, certiorari denied, 1955, 350 U.S. 911, 76 S.Ct. 193; 55 Col.L.Rev. 1231 (1955).

9. See Seidel, Patent Litigation, 1 Prac. Lawyer [March, 1955] p. 49. The author recommends that a patentee sue the infringer in a "hospitable" circuit, and if none is available, he recommends suing a customer of the infringer in such a circuit. If the patentee still cannot choose a forum desirable to him, the author continues, he should sue for damages and ask for a jury on the theory that laymen are more inclined to protect the patent holder than are judges. The following quotation from his article is very much in point as to the maneuverings that are recommended: "The declaratory judgment provisions [28 U.S.C. §§ 2201, 2202 (1952)] should be borne in mind by any patentee contemplating issuing notices of infringement, or threats of suit. If the infringer may be sued in a forum hospitable towards patents and the patent owner is subject to suit in a forum hostile towards patents, suit should be brought by the patent owner without the issuance of a notice of infringement, assuming that the statutory provisions as to patent marking or actual notice of the patent on the part of the infringer have been met. The reason for this is that a notice of infringement, or an advertisement threatening suit, constitutes sufficient basis for a declaratory judgment action, which may then be brought against the patent owner in the hostile forum." (p. 52).

10. See, e. g., Helene Curtis Industries, Inc., v. Sales Affiliates, Inc., 2 Cir., 1952, 199 F.2d 732; Remington Products Corp. v. American Aerovap, Inc., 2 Cir., 1951, 192 F.2d 872; Hammett v. Warner Bros. Pictures, Inc., 2 Cir., 1949, 176 F.2d 145; Crosley Crop. v. Hazeltine Corp., 3 Cir., 1941, 122 F.2d 925, certiorari denied 1942, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211.

11. See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 1952, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200.

12. See, e. g., cases cited in notes 10 and 11, supra.

13. See Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., D.C.S.D.N.Y., 105 F.Supp. 886, 891, affirmed 2 Cir., 1952, 199 F.2d 732 (The patent was issued by the Patent Office at noon of December 4, 1951. The first litigant filed its complaint for a declaratory judgment in the Southern District of New York 59 minutes later; a second, also in the Southern District, at 2:20 p. m.; and later

first or as a prompt retaliator, is open to the charge of forum shopping whenever he chooses a forum with slight connection to the factual circumstances surrounding his suit.[14] Litigants should be encouraged to attempt to settle their differences without imposing undue expense and vexatious situations on the courts.

In the instant case, there are two forums affected, separated only by the width of a river and with the courts only a few miles from each other. Because Hy-Grade seeks to intervene in New York, and because Rayco will probably intervene or defend Hy-Grade against Chicopee in New Jersey, the present posture of the litigation is that the same parties will be affected by the same issues in both forums.[15] The New York suit was begun before the New Jersey action, but the business activities of all the parties are much more closely connected with New Jersey. Furthermore, Rayco's affidavits indicate that the prior use witnesses also have contact with New Jersey.

■■ Under the circumstances, I believe that New Jersey is a more appropriate forum in which to conduct the litigation. I realize that by utilizing section 1404(a) without giving the customary regard to the plaintiff's exercise of its venue privilege, I may appear to be departing from an attitude often expressed by the courts,[16] indeed, one found in my own opinions.[17] But, I believe that I am justified by the readily appar-

that day, a third litigant filed several complaints in the District Court of the District of Columbia.)

The subsequent history of this litigation is also of interest. The patent, which was based on a general claim, was declared invalid and an injunction was issued restraining the patent holder from suing the alleged infringer and its customers on that patent. D.C.S.D.N.Y. 1954, 121 F.Supp. 490, affirmed 2 Cir., 1956, 233 F.2d 148. Meanwhile, specific claims subsumed under the above general claim were being pressed in the Patent Office. In November of 1955, while the appeal on the "general" patent was pending in the Second Circuit, a corporation was formed in Virginia for the purpose of owning the patents which might issue on the specific claims, and the rights on these claims were assigned to it. On February 28, 1956, the Patent Office issued patents on these specific claims, and on the same day the Virginia Corporation brought suit in the Eastern District of Virginia against customers of the plaintiffs in the former declaratory judgment action. Shortly thereafter, these plaintiffs, who now were made defendants, brought motions in the Southern District of New York which asked that the patent holders be held in contempt of the prior decree and that they be restrained by a new injunction. These motions were denied on the ground that since apparently new patents were involved, the presumption of validity attaching to them required a plenary consideration of their validity. D.C.S.D. N.Y.1957, 148 F.Supp. 340.

14. Conceivably, there are situations where this would not be the case, as, for instance, a recent case presented to me on an application for transfer under § 1404 (a). That case involved an airplane accident in the far west which gave rise to many death claims, most of them concentrated in Wyoming. However, I sustained the position urged by a local resident against transfer, a widow with four infant children. Her removal to Wyoming would have involved the loss of her employment and the serious disruption of her home, with consequent financial and personal impediments in pressing her claim. See Bush v. United Air Lines, Inc., D.C.S.D.N.Y.1956, 148 F. Supp. 104.

15. In either jurisdiction, the nature of the litigating parties is such that a finding of invalidity will free the alleged infringer from further suits against it or its customers on the instant subject matter. Kessler v. Eldred, 1907, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065.

16. See, e. g., Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789; 55 Col.L.Rev. 1067 (1955); Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329, certiorari denied 1950, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624; National Tea Co. v. Marseille, D.C.S.D.N.Y.1956, 142 F.Supp. 415; Lehn & Fink Produets Corp. v. Milner Products Co., D.C.S.D.N.Y.1953, 117 F.Supp. 320.

17. See Rubin v. General Tire & Rubber Co., D.C.S.D.N.Y.1955, 18 F.R.D. 51; Bush v. United Airlines, Inc., note 14, supra.

ent "forum shopping," by the jumbled plaintiffs and defendants in this case, and by the presence of all the issues in both this District and in the New Jersey District. Furthermore, such a departure, if indeed it is a departure, may tend to discourage the common practice in patent litigation of racing to the court-house. I must add, however, that this feature did not appear in this litigation until the Virginia action was begun.

Accordingly, Chicopee's motion to transfer to the District of New Jersey is granted. Hy-Grade's motion for inter-vention and Rayco's motion to enjoin Chicopee from prosecuting the New Jer-sey action are denied. I do not believe that enough has been shown to warrant a general injunction against Chicopee from threatening or commencing further suits on this subject matter, for it recog-nizes that a judgment of invalidity in the New Jersey action will bar such suits. And if need for such a remedy should arise, Rayco has recourse to the court of the District of New Jersey.

Submit orders on notice in accordance with this opinion.