**COLUMBIA PICTURES INDUSTRIES, INC., Plaintiff,**

v.

**Berton J. SCHNEIDER, Robert J. Rafelson and J. Stephen Blauner, Defendants.**

**No. 76 Civ. 4463.**

United States District Court, S. D. New York.

July 26, 1977.

Weil, Gotshal & Manges, New York City, for plaintiff.

Hofheimer, Gartlir, Gottlieb & Gross, New York City, for defendants.

LASKER, District Judge.

Columbia Pictures Industries, Inc., a Delaware corporation with its principal place of business in New York, sues Berton Schneider, Robert Rafelson and Stephen Blauner, all residents of California, for a declaratory judgment that Columbia has not, alone or in concert with A.B.C. Television, violated the anti-trust laws or breached its contract with the defendants or otherwise violated their rights in connection with its marketing for national network broadcast the motion picture film, "The Last Picture Show." Columbia also seeks a preliminary injunction restraining the defendants from prosecuting an action which the defendants filed in the Central District of California which sought damages and injunctive relief against Columbia and ABC for anti-trust violations, breach of contract, violation of fiduciary duty, and conspiracy to defraud. In essence, Columbia argues that since its action in the Southern District of New York was filed six days before the defendants' action in California, the California proceedings should be enjoined. Defendants argue that California is the more appropriate forum for litigation of the issues between the parties, and move to dismiss the complaint for lack of personal jurisdiction and failure of service.

## I.

Prior to December 31, 1971 defendants were the sole stockholders of an independent motion picture production company called BBS Productions, Inc. ("BBS"), a California corporation. In 1970 BBS acquired the motion picture rights to the novel, "The Last Picture Show," and commenced production. In order to secure financing for the picture, BBS assigned to Columbia Pictures distribution rights and a share in the profits of the film; BBS retained a 30% interest in the net proceeds of "The Last Picture Show."

On December 30, 1971, Schneider, Rafelson and Blauner sold to Columbia Pictures all of the issued and outstanding shares of BBS stock pursuant to an Agreement of Sale ("the contract"). BBS' 30% interest in the net proceeds of "The Last Picture Show" was one of many assets acquired by Columbia through its purchase of the BBS stock. The purchase price set by the contract for the BBS stock was to be no less than $350,000. and no more than $10,000,-000. altogether. Defendants were entitled to semi-annual payments of 85% of the total amounts realized by Columbia from the assets of BBS—which included other motion pictures in addition to "The Last Picture Show"—between December 30, 1971 and December 30, 1978.

In March, 1974 Columbia entered into a television licensing agreement with A.B.C. Television for its national broadcast of "The Last Picture Show" and nine other movies owned by Columbia. In the summer of 1976 Schneider, Rafelson and Blauner retained the Los Angeles law firm of Simon & Sheridan to investigate the facts underlying the Columbia-ABC transactions and Schneider's contention that such transactions "constituted an illegal tie-in and block-booking" and that in addition "there was a secret side deal entered into whereby ABC agreed that Columbia would produce certain television pilot films for ABC." (Defendant's Opposition Memorandum, p. 11) Simon & Sheridan drafted a complaint alleging that the ABC–Columbia transaction amounted to a violation of the federal anti-trust laws, a breach of the 1971 contract, and a conspiracy to defraud Schneider et al.

Instead of filing the finalized draft of this complaint, however, on August 13, 1976 Schneider sent a copy of the proposed complaint to Leo Jaffe, Chairman of the Board of Columbia, at his New York Office. The personal covering letter reads as follows:

"Dear Leo,

I have enclosed a set of papers which need very little explanation. I am completely convinced as to their accuracy. In light of our long-standing friendly relationship, I believe that the acts we allege were done without your knowledge. Therefore, as a courtesy to you, I have postponed filing these papers for ten days so you can have a chance to investigate the matter.

If after checking all this out, you feel we have something to discuss, please let me know before the end of the month.

I am sorry to see us once again in conflict, but I am sure that once having looked into the matter you will understand our position.

Sincerely,"

Three days later, on August 16, Sheridan & Smith sent copies of the complaint to counsel for Columbia Pictures and ABC (which was named as a defendant) along with a cover letter inviting negotiations towards settlement in lieu of filing the complaint.

As a result of these communications, various meetings and telephone conversations were had from August 25, 1976 to September 30, 1976 between the parties and their counsel concerning possible settlement. Although offers were apparently made on both sides, the two positions were quite far apart. (Kaufman Reply Affidavit, ¶ 9; Stulberg Deposition at 28, 37, 39–40) On October 3, 1976, following a phone conversation on September 30, 1976 with Leo Jaffe in which no agreement was reached, Schneider advised Simon & Sheridan to file their complaint in the United States District Court for the Central District of California.

On October 8, 1976 Columbia filed its complaint in the Southern District of New York. Schneider's complaint was filed in California six days later on October 14th. Columbia moved immediately for a temporary restraining order and preliminary injunction prohibiting Schneider, et al. from proceeding with the California litigation; on October 18, 1976, a temporary restraining order was granted. By stipulation the parties have agreed not to proceed with either suit pending decision on Columbia's motion for a preliminary injunction.

## II.

"Where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action." *Meeropol v. Nizer,* 505 F.2d 232, 235 (2d Cir. 1974). It is this power which Columbia seeks to have the court exercise in favor of its action: "first-filed" by six days. There is no dispute that both law suits "embrace" the same issues, or that ABC, joined as a party in the California litigation but not presently named in the New York complaint, could be made a party to the New York lawsuit. See *Meeropol v. Nizer, supra.* At first blush, therefore, Columbia appears to be entitled to the benefit of this circuit's "first-filed" rule:

> "as a principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action,' *Remington Products Corp. v. American Aerovap, Inc.,* 192 F.2d 872, 873 (2d Cir. 1951); *Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d 421, 423 (2d Cir. 1965), *petition for cert. dismissed,* 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966), or unless there are special circumstances which justify giving priority to the second. *Joseph Bancroft & Sons Co. v. Spunize Co. of America,* 268 F.2d 522 (2d Cir. 1959).

*William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177, 178 (2d Cir. 1969).

Schneider does not seriously contend that the balance of convenience favors California strongly over New York; rather, he and his codefendants argue that "there are special circumstances which justify giving priority" to their second-filed suit. The caselaw has thus far recognized only two such "special circumstances:" the first, clearly not applicable here, applies when the first-filed suit is against a customer of an alleged patent infringer while the second suit involves the infringer himself, *William Gluckin & Co. v. International Playtex Corp., supra,* 407 F.2d 177; the other when forum-shopping alone motivated the choice of situs for the first suit. *Rayco Mfg. Co. v. Chicopee Mfg. Co.,* 148 F.Supp. 588 (S.D.N.Y. 1957); *Mattel, Inc. v. Louis Marx & Co., supra,* 353 F.2d at 424, n. 4.

Schneider argues that Columbia's New York suit should be stayed and his California suit allowed to proceed because Columbia chose New York as a forum solely for reasons of forum-shopping. This argument is based on the undisputed proposition that the Second Circuit's rule on standing in anti-trust actions would preclude Schneider's assertion of a claim for treble damages against Columbia in this district. *Fields Productions, Inc. v. United Artists Corp.,* 432 F.2d 1010 (2d Cir. 1970), *aff'g.,* 318 F.Supp. 87 (S.D.N.Y.1969), *cert. denied,* 401 U.S. 949, 91 S.Ct. 932, 28 L.Ed.2d 232 (1971), whereas the Ninth Circuit has upheld the standing of similarly situated plaintiffs (as Schneider et al. would be there) to sue for treble damages. *Mulvey v. Samuel Goldwyn Productions,* 433 F.2d 1073 (9th Cir. 1970).

However, a litigant is "open to the charge of forum shopping [only when] he chooses a forum with *slight connection* to the factual circumstances surrounding his suit," *Rayco Mfg. Co. v. Chicopee Mfg. Co., supra,* 148 F.Supp. at 593 (emphasis added), or where "forum shopping *alone*" motivated the choice of situs. *Mattel Inc. v. Louis Marx & Co., supra,* 353 F.2d at 424, n. 4 (emphasis added). It cannot be said that New York has only a "slight connection" to the subject matter of this litigation. Columbia's principal place of business is in

New York. The events which Schneider et al., claim violated the anti-trust laws and breached their contract consist largely of deals negotiated between Columbia and ABC in New York. The monies for which Schneider seeks an accounting and imposition of a trust are received by Columbia from ABC in New York. Thus, there is a logic to Columbia's choice of the New York forum apart from the undoubted advantage to it of the Second Circuit standing rule. Accordingly, forum shopping cannot be found to be the *sole* basis for Columbia's choice of this forum.

 Although Schneider's arguments in favor of proceeding in California fall within neither of the articulated exceptions to the "first-filed" rule, other relevant factors may be considered in deciding this issue, which is committed to the "sound discretion of the district court." *William Gluckin & Co. v. International Playtex Corp., supra*, 407 F.2d at 178; *Mattel Inc. v. Louis Marx & Co., supra,* 353 F.2d at 424. In reversing a district court's exercise of its discretion in favor of a second-filed suit, the Court of Appeals in *Mattel* wrote that:

> "We believe it to be a sound rule that the issues should be tried in the district where suit is first brought unless there are other *factors of substance which support the exercise of the court's discretion* . . . in favor of proceeding first in another district." (emphasis added)

However, *Mattel* listed the two "special circumstances" described above as merely "examples of situations which would justify a departure from the 'first-filed' rule of priority; " this language suggests that the Court of Appeals contemplated that there are other situations or "factors of substance" warranting departures from the first-filed rule. The presumption in favor of the forum of the first-filed suit is not to be applied in a "rigid" or "mechanical" way. *William Gluckin & Co. Inc. v. International Playtex, supra,* 407 F.2d at 179; *Telechron, Inc. v. Parissi,* 197 F.2d 757, 762 (2d Cir. 1952).

 We believe there are several "factors of substance" in this case which warrant denying plaintiff's motion for a preliminary injunction and issuing a stay of the instant action pending disposition of the California suit.

### A.

Under the facts of this case, it would create disincentives to responsible litigation if Columbia were allowed to prevent Schneider et al. from litigating in the forum of their choice by having won the race to the courthouse by six days. Columbia has characterized Schneider's letter of August 13, 1976 as a "threat" somehow tinged with impropriety, justifying it in resorting to the Declaratory Judgments Act "to avoid the unfairness of allowing one party to create a controversy by making . . . charges but, by withholding suit, to prevent the other party from conclusively refuting them." *Topp-Cola v. Coca-Cola Co.,* 314 F.2d 124, 125 (2d Cir. 1963). We cannot agree, however, that Schneider did anything improper in sending Columbia a copy of the complaint before filing it, or that the defendants "withheld suit" thereby preventing Columbia from refuting the charges made against it. Columbia does not dispute Schneider's good faith in offering to discuss settlement, nor is there any factual claim that Schneider or his attorneys were dilatory in filing the complaint or behaved in such a way as to threaten injury to Columbia's reputation.

 Indeed, the procedure followed by Schneider and his attorneys is commendable. As federal court calendars become increasingly burdened, attorneys should exercise a correspondingly increased responsibility to attempt to resolve disputes without using limited judicial resources to decide issues which might, by responsible discussions between reasonable people, be settled out of court. See *Rayco Mfg. Co. v. Chicopee Mfg. Co., supra,* 148 F.Supp. at 593. Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an

already drafted complaint. On this point, we conclude that the equities favor proceeding with the litigation in California.

### B.

■ Our decision does not rest exclusively on these grounds, however. It is significant that Schneider and his co-parties claim in their California complaint that Columbia and ABC violated the anti-trust laws. The "first-filed" rule should not be mechanically applied against would-be anti-trust plaintiffs, whom Congress intends to have a broader than usual choice of venue. 15 U.S.C. §§ 15, 22. Moreover, only six days elapsed between the filing of the two complaints; no discovery or other pretrial proceedings have occurred in either district.[1] Thus, no judicial inefficiency or duplication of efforts will result from requiring the parties to litigate their dispute in California.

### C.

Indeed, considerations of judicial economy militate in favor of the California forum. There is no question that the federal district court in California has personal jurisdiction over all necessary parties to this litigation. There is a substantial question—for reasons set forth below—whether such jurisdiction exists under the New York long arm statute against these defendants, all of whom reside in California. The possibility of an erroneous determination of personal jurisdiction in New York followed by lengthy proceedings thereafter over which we were ultimately found to lack jurisdic-

tion, and the desirability of avoiding decisions unnecessary to ultimate resolution of the merits by a federal court strongly suggest that California is a more appropriate forum.

■ Plaintiff asserts long-arm jurisdiction over the three defendants under the provisions of N.Y.C.P.L.R. § 302(a)(1),[2] which provides that:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who in person or through an agent:

1. transacts any business within the state . . . ."

In order to sustain the assertion of long arm jurisdiction here, plaintiff must carry the burden of showing that (1) defendants, in person or through agents, transacted business in this state, and (2) plaintiff's cause of action arises out of those transactions of business. *A.I.L., A Division of Cutler-Hammer, Inc. v. Symetrics Industries, Inc.*, 360 F.Supp. 1138 (E.D.N.Y.1973).

■ There is no doubt that the 1971 contract, which the defendants claim Columbia breached by its transactions with ABC, was signed in California and is by its terms governed by California law relating to contracts "made" within that state.[3] In personam jurisdiction may nonetheless be found in New York if defendants engaged in "substantial negotiations," *Chemical Bank v. World Hockey Association*, 403 F.Supp. 1374, 1379 (S.D.N.Y.1975); *Longines-Wittnauer Co. v. Barnes Reinecke*, 15

---

1. The only discovery which has occurred has been addressed to the question of personal jurisdiction in New York and to the other threshold issues raised by this motion; no discovery as to the merits of either complaint has occurred.

2. Columbia makes a half-hearted argument that the defendants are also "doing business" in New York and are therefore subject to the jurisdiction of this court pursuant to N.Y.C.P.L.R. § 301 under the reasoning of *ABKCO Industries, Inc. v. Lennon*, 52 A.D.2d 435, 384 N.Y.S.2d 781 (1st Dept. 1976), *aff'g* 85 Misc.2d 465, 377 N.Y.S.2d 362 (Sup.Ct.1975). We cannot agree that the defendants' occasional con-

tacts with New York attorneys and accountants in connection with various film projects over the years amount to "doing business" within the state.

3. In the discussion in the text which follows, we mention only those contacts which appear to be most significant. For example, in addition to the contacts noted above, defendants and plaintiff corresponded and made interstate phone calls between New York and California in connection with the contract; these contacts in the totality of the parties' transaction involving "The Last Picture Show" do not have much weight.

N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), or activities relating to its performance in New York. *Atlantic Metal Products, Inc. v. Blake Construction Co., Inc.*, 40 A.D.2d 966, 338 N.Y.S.2d 714 (1st Dept. 1972). Whether the negotiations in New York by one of the defendants' Los Angeles attorneys, Norma Zarky, were "substantial" is not clear, although it does appear to be the case that significant details concerning accounting methods to be used under the contract were negotiated in New York between a New York accounting firm acting on defendants' behalf and Columbia and that two audits were performed for defendants by New York accountants in New York in 1973–74. Moreover, in December 1974 the defendants gave a power of attorney to a New York lawyer, Sidney Cohn, to negotiate and sign an agreement claimed to modify certain aspects of the 1971 agreement. In 1975, Berton Schneider personally met in New York with Jack Feigenbaum, Director of Producers' Accounting at Columbia, concerning performance of the 1974 agreement. With one exception,[4] however, none of these or other New York contacts set forth at pp. 17–24 of plaintiff's reply memorandum concerned the film here at issue, "The Last Picture Show." For this reason alone, one might question whether, assuming arguendo these contacts amount to a transaction of business in New York, the cause of action arose out of the defendants' within the state transactions.

The more serious difficulty in deciding whether long arm jurisdiction under § 302(a)(1) may be asserted against these defendants arises from the posture of this action. The purpose of the long arm statute is remedial. *Longines-Wittnauer Co. v. Barnes Reinecke, supra,* 15 N.Y.2d at 453, 261 N.Y.S.2d 8, 209, N.E.2d 68; *Steele v.*

*DeLeeuw,* 40 Misc.2d 807, 244 N.Y.S.2d 97, 99 (Sup.Ct.Nassau Co., 1963); it is designed to permit plaintiffs claiming injury by out-of-state defendants to sue such nondomiciliaries within the state if the defendants transacted business or engaged in tortious activity causing the injury within the state. To this end, the statute has been liberally construed.

But in enacting § 302, the New York state legislature chose not to exercise the full extent of its constitutional power to permit assertion of in personam jurisdiction over nondomiciliaries. *Fontanetta v. American Board of Internal Medicine,* 421 F.2d 355 (2d Cir. 1970); *LaVie v. Marketscope Research Co., Inc.,* 71 Misc.2d 373, 336 N.Y.S.2d 97 (Sup.Ct., App.Term 1st Dept. 1972). One of the significant limitations imposed by the state legislature was that where long arm jurisdiction is predicated on the mere "transaction of any business" in the state, plaintiff's cause of action must have arisen out of that transaction of business. *Fontanetta v. American Board of Internal Medicine, supra,* 421 F.2d at 357; *United States v. Montreal Trust Co.,* 358 F.2d 239 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); *American Radio Association v. A.S. Abell Co.,* 58 Misc.2d 483, 296 N.Y.S.2d 21 (Sup.Ct., N.Y.Co.1968).

Not surprisingly, long arm jurisdiction under § 302(a)(1) has typically been exercised when plaintiff has claimed an injury arising out of the defendant's transaction of business within the state.[5] See, e. g., *Longines-Wittnauer Co. v. Barnes Reinecke, supra.* Here, by contrast, Columbia merely seeks a declaratory judgment that it did not injure the nondomiciliary defendants. It is difficult to understand in what way a cause

---

**4.** In September of 1976 Berton Schneider's father underwent surgery at a New York hospital. Schneider came to New York for the purpose of visiting his father. While at the hospital, Schneider spoke with Jaffe on the telephone and arranged a meeting which occurred two days later in Jaffe's New York office to discuss possible settlement of this lawsuit. A meeting to discuss settlement of a lawsuit undertaken while a defendant is in New York on

personal business is not, in our view, a "transaction of business" out of which the cause of action may be said to have arisen. See *Banker's Commercial Corp. v. Alto, Inc.,* 30 A.D.2d 517, 289 N.Y.S.2d 993 (1st Dept. 1968).

**5.** Indeed, research has disclosed no case in which long arm jurisdiction under § 302(a)(1) has been asserted by a plaintiff in a purely defensive declaratory judgment action.

of action for a declaration that plaintiff did not injure defendants "may fairly be said to have arisen" out of the defendant's transaction of business in the state, *Aviation Sales Corp. v. Canada ITW Ltd.*, 346 F.Supp. 864, 865 (E.D.N.Y.1972); the activities which actually gave rise to the instant controversy were Columbia's transactions with ABC.

If it is the case that "[d]ue process considerations would undoubtedly be more restrictive [in interpreting § 302] if there were involved simply a dispute of commercial dimensions between parties to a commercial contract [than where] one introduces into a state a dangerous instrument," *Singer v. Walker*, 21 A.D.2d 285, 250 N.Y.S.2d 216, 223 (1st Dept. 1964) (Breitel, J.), then a still more restrictive view should prevail where the plaintiff claims no injury at all from the defendants' within the state business transactions. The remedial purposes of the long arm statute would not be promoted by a finding that personal jurisdiction exists here; indeed, where no injury to the plaintiff is claimed, it seems more likely that the state courts would adhere to the advice given in *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 383, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (1967):

> "In our enthusiasm to implement the reach of the long-arm statute (CPLR 302), we should not forget that defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters or where they conduct substantial general business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact."

Thus, as a matter of policy we doubt that a liberal construction should be given where a New York domiciliary seeks to require non-domiciliaries to appear in the state to permit plaintiff to establish that it has not injured the out-of-staters; as a matter of law, it would be difficult, without clearer

guidance from the state courts, to find that plaintiff's cause of action arose out of the defendant's within-the-state transactions.

These difficult questions need not be resolved, however, since their mere existence in this case suggests that considerations of judicial economy require the case to be litigated first in California. Were we to enjoin the California action and decide the motion to dismiss, a hearing might be necessary to determine the extent of the New York negotiations on the 1971 contract. *Grandoe Glove Corp. v. Great Eastern Financial Corp.*, 34 A.D.2d 593, 308 N.Y.S.2d 467 (3d Dept. 1970); *Ellis v. Smith Transfer Corp.*, 24 A.D.2d 871, 264 N.Y.S.2d 414 (2d Dept. 1965); should the issue ultimately be resolved against Columbia, this would be an unnecessary use of judicial resources in light of the clear jurisdiction of the California court over all parties. If the issue were decided favorably to Columbia, but later overruled on appeal, much time and energy would have been wasted by the parties and the court. Finally, since another federal district court has jurisdiction over the parties and the issues, refusal to decide this difficult question of state law may be justified on the ground that such decision is simply unnecessary to the ultimate resolution of the merits by a federal court.

## D.

Columbia has urged a number of other factors against litigation of this matter in California and in favor of the New York forum. In response to the defendants' argument that the first-filed rule should not be applied to anti-trust action, Columbia argues that even in anti-trust actions a plaintiff's initial choice of forum is subject to change on a defendant's motion under 28 U.S.C. § 1404(a). While this is true, it is not relevant. An examination of the affidavits and moving papers submitted on both sides suggest that neither could succeed on a § 1404(a) motion to transfer.[6]

---

**6.** All three of the defendants are in California, as are their records. While plaintiff and its records and personnel are in New York, as are the records and personnel of ABC, at least one and possibly two key witnesses for Columbia presently reside in California. It appears unlikely that either side could make the requisite clear showing under § 1404(a) that the balance of convenience of the parties and witnesses decisively favors its chosen forum.

While an even or inconclusively tilted "balance of convenience" would ordinarily support application of the first-filed rule, the factors discussed above favor departure from the rule. Nor does the fact that defendants, in their California complaint, seek imposition of a constructive trust on the monies received by Columbia from ABC in New York dictate giving priority to the New York action. If defendants prevail on the merits of their California complaint, the California court can determine what equitable relief is to be given as to funds held in New York. In any event, Columbia does not stand to suffer should the defendants, by successfully seeking a California forum, thereby lose a remedy against plaintiff. Finally, Columbia argues that the continuing jurisdiction of this district court in *United States v. Screen Gems, Inc.*, Civ.Ac.No.119-285 (S.D.N.Y.1963) and other pending litigation here favor this district as a forum. Unless Columbia is planning to move for transfer of this case to another judge of this court as a "related case"—and it has given no indication of its intent to do so—this factor is inapposite.

### E.

It is important to emphasize that departure from the first-filed rule is warranted by the totality of the circumstances in this case, to wit: (1) Schneider's good faith attempts at settlement, which included sending a finally drafted proposed complaint to Columbia; (2) the minimal difference in time between the filing of the two complaints, that is, only six days; (3) the fact that the litigation has not yet proceeded in either district; (4) the desirability of according plaintiffs in anti-trust actions their choice of forum; (5) the questionable existence of in personam jurisdiction over the defendants in this court. Taken as a whole, these considerations are "factors of substance which support the exercise of the court's discretion . . . in favor of proceeding first" in California. *Mattel v. Louis Marx & Co., supra*, 353 F.2d at 424.

For all the foregoing, plaintiff's motion for a preliminary injunction is denied and the within action is stayed pending disposition of the California action.

It is so ordered.