CREIGHTON OMAHA REGIONAL HEALTH CARE CORPORATION, a nonprofit corporation, Plaintiff,

v.

The LOMAS & NETTLETON COMPANY, a corporation, Defendant.

Civ. No. 79-0-200.

United States District Court, D. Nebraska.

Jan. 18, 1980.

Robert L. Berry, Omaha, Neb., for plaintiff.

Kermit A. Brashear, II, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

The plaintiff, Creighton Omaha Regional Health Care Corporation [Creighton-Omaha], has filed this action against the defendant, The Lomas & Nettleton Company [Lomas], seeking a declaratory judgment and other appropriate relief. Prior to this suit, Lomas brought a similar action in the United States District Court for the Northern District of Texas, Dallas Division, seeking a declaratory judgment. Both of these law suits arise out of a mortgage agreement in which the mortgagor was Creighton-Omaha and the mortgagee was Lomas. The matter now before this Court is Lomas' motion to stay the instant proceeding pending completion of the Texas law suit.

*Facts*

The mortgage agreement in issue in both of these law suits was executed on July 30, 1974. Under this mortgage agreement, Creighton-Omaha was required to pay Lomas, in monthly increments, an amount equal to an annual mortgage insurance premium. This insurance premium was then to be paid by Lomas to the insurer. On June 29, 1977, an additional loan was made. This second loan was secured by a Modification Agreement which modified the original mortgage to include the additional loan amount, but which otherwise left the provisions of the mortgage unchanged.

The annual mortgage insurance premium is paid by Lomas to the Federal Housing Administration, the insurer. These premiums may be paid in cash or in FHA debentures. If debentures are used, the mortgagee, in this case Lomas, must tender to the FHA both debentures with a face value equal to the mortgage premium and a cash deposit for the same amount. The FHA then receives a cash payment from the United States Treasury equal to the face value of the debentures, and returns to the mortgagee the original cash deposit. By paying the premium in debentures, Lomas is able to realize a profit because of the market value of FHA debentures. These debentures may be purchased on the open market for less than their face value. Lomas, however, receives cash payments from Creighton-Omaha in an amount equal to the insurance premium. Lomas, therefore, profits since the actual cost of the premium paid in debentures is less than the cash amount paid by Creighton-Omaha.

Creighton-Omaha became aware of this arrangement for paying the insurance premiums sometime prior to March 11, 1976. On that date, Creighton-Omaha sent a letter to Lomas expressing an interest in participating in this arrangement. Lomas' reply dated April 5, 1976, stated that the option to participate was not available to a mortgagor but only to FHA approved mortgagees. Creighton-Omaha was not satisfied with this response and in a letter dated August 25, 1978, indicated its intent to seek a judicial determination of its rights if the matter could not be amicably resolved. In response to this letter, counsel for Lomas reasserted Lomas' prior position on this matter. This response, however, did indicate Lomas' willingness to consider any legal theories on which Creighton-Omaha based its claim to participate in the debenture arrangement. Following this correspondence, counsel for each party exchanged legal opinions on this matter. This exchange occurred during the period of time from December 19, 1978, to April 1, 1979. It, however, failed to resolve the dispute between the parties.

Since the parties were at an impasse, Mr. C. E. Heaney, counsel for Creighton-Omaha, contacted Mr. Earl A. Berry, Jr., counsel for Lomas, to inform him of Creighton-Omaha's plans. In an affidavit submitted to this Court, Mr. Heaney stated that he "advised Mr. Berry that he would again review the matter with the Finance Committee of the Board of CORHCC [Creighton-Omaha] at its scheduled meeting on April 20, 1979 to determine if there was any change in its earlier decision to file suit against L & N [Lomas] in Nebraska and that Mr. Berry would be advised of the Committee's decision prior to any action by CORHCC." [Filing # 12]. A counter-affidavit of Mr. Berry has been submitted by Lomas in response to the Heaney affidavit. This counter-affidavit does not contradict the affidavit of Mr. Heaney, but rather states that Mr. Berry, at no time prior to the filing of the Texas law suit, agreed to refrain from suit pending Creighton-Omaha's decision to sue. Mr. Berry also states that he advised Mr. Heaney that he "could not guarantee" what Lomas would do before the April 20, 1979, meeting of the Finance Committee of Creighton-Omaha. *Affidavit of Earl A. Berry, Jr.* [Filing # 16].

Following this telephone conversation between Heaney and Berry, Lomas filed suit in the United States District Court for the Northern District of Texas. On April 20, 1979, Mr. Berry advised Mr. Heaney that suit had been filed in Texas.

### The Texas Action

The Texas complaint of Lomas seeks a declaratory judgment to determine the parties' interest in certain funds deposited by Lomas in a Dallas bank. Lomas alleges that the money which it received as a refund on its mortgage insurance premium has been deposited in a bank account in the First National Bank of Dallas. The complaint further alleges that Creighton-Omaha's claim to the difference between the face value and market value of the FHA debentures used by Lomas to pay mortgage insurance premiums constitutes a cloud upon Lomas' title to such funds. Lomas'

prayer for relief requests that the Texas court declare that Creighton-Omaha is not entitled to receive the benefits of the arrangement by which FHA debentures are used to pay the mortgage insurance premiums.

Service of process in this Texas suit was made pursuant to 28 U.S.C. § 1655.

> In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant can not be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.

Creighton-Omaha has filed a motion in the Texas district court requesting the court to quash service of process. Although this motion has been submitted to the Texas court, no decision on its merits has yet been made. This Court, therefore, will not discuss the merits of this Texas motion, since it should properly be decided by the Texas court.

It should also be noted that two other motions are pending before the Texas court. These motions were filed by Mercantile Bank at Dallas and First National Bank at Dallas seeking to intervene in the Texas action. These banks seek to intervene to protect their possessory interest in the funds which are the subject of the Texas litigation. Both of these motions are presently under consideration by the Texas district court.

### The Nebraska Action

On May 24, 1979, Creighton-Omaha filed suit in this Court seeking a declaration of its rights under the mortgage agreement. The complaint alleges that Lomas has breached its contractual and fiduciary obligations to Creighton-Omaha by refusing to allow it to benefit from the use of FHA debentures to pay the mortgage insurance premiums. In addition to declaratory relief, Creighton-Omaha also seeks to recover an amount equal to the difference between the then current market value of the debentures used to pay the insurance premiums

and the amounts Lomas has charged Creighton-Omaha under the mortgage agreement. Creighton-Omaha also requests that this Court enjoin Lomas from charging it any amounts in excess of the fair market value of the debentures used to pay the insurance premiums.

A motion to stay or dismiss has been filed in the instant action by Lomas. This motion is based on two separate contentions. First, Lomas contends that this Court lacks personal jurisdiction because service of process was insufficient. This contention, however, was withdrawn by counsel during oral arguments. Second, Lomas argues that the instant action should be stayed pending resolution of the Texas litigation. This second argument is based on Lomas' assertion that the Texas district court can provide a more comprehensive determination of the dispute between the parties. Lomas also contends that the Texas action should be given priority since it was filed prior to the Nebraska litigation.

Both parties have filed extensive memorandum briefs and documentary evidence in support of their respective positions. The Court has thoroughly considered this material and the oral arguments presented by the parties. For the reasons discussed below, this Court is of the opinion that this law suit should not be stayed pending resolution of the Texas litigation.

*Discussion*

Declaratory judgment actions are an exception to the general rule that a court does not have the authority to decline to exercise jurisdiction conferred upon it. *Employers Mutual Casualty v. El Dorado Springs R-2 School District,* 264 F.Supp. 669, 670 (W.D.Mo.1967); *National Union Fire Insurance Company v. Lippert Brothers, Inc.,* 233 F.Supp. 650, 651 (D.Neb.1964). *Cf. Augustin v. Mughal,* 521 F.2d 1215, 1216–17 (8th Cir. 1975) (which held that the abstention doctrine is "an extraordinary and narrow exception to the court's duty to adjudicate a controversy properly before it which may be invoked only in exceptional circumstances.") This exception arises because the Declaratory Judgment Act "gave

federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962). The issue, therefore, is not whether this Court has jurisdiction, but rather whether this jurisdiction should be exercised when a suit involving the same issues is pending in another court. *State Farm Mutual Automobile Insurance Company v. Bonwell,* 248 F.2d 862, 864–65 (8th Cir. 1957); *Employers Mutual Casualty Company v. El Dorado Springs R-2 School District, supra,* 264 F.Supp. at 670. This determination of whether to accept jurisdiction is entrusted to the trial court's discretion. The nature of this discretion is illustrated by the United States Supreme Court's holding in *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952):

> The Federal Declaratory Judgment Act, facilitating as it does the initiation of litigation by different parties to many-sided transactions, has created complicated problems for coordinate courts. Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.

*Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co., supra,* 342 U.S. at 183, 72 S.Ct. at 221.

Since no rigid mechanical rule governs the exercise of this discretion, this Court must balance a variety of factors to determine whether the instant law suit should be stayed pending resolution of the Texas litigation. *Krey Packing Co. v. Hamilton,* 572 F.2d 1280, 1284 (8th Cir. 1978); *Employers Mutual Casualty Company v. El Dorado Springs R-2 School District, supra,* 264 F.Supp. at 671; *National Union Fire Insurance Company v. Lippert Brothers, Inc., supra,* 233 F.Supp. at 654. In balancing

these factors, each case must be decided upon its own particular facts. *State Farm Mutual Insurance Co. v. Bonwell, supra,* 248 F.2d at 865; *Employers Mutual Casualty Company v. El Dorado Springs R–2 School District, supra,* 264 F.Supp. at 671.

■ An important factor in determining whether a declaratory judgment action should be stayed pending suit in another court is the identity of issues between the pending law suits. *Employers Mutual Casualty Company v. El Dorado Springs R–2 School District, supra,* 264 F.Supp. at 671. If the issues involved in each case are substantially identical, allowing each suit to proceed results in the wasting of valuable judicial resources. In the instant cases, the issues presented in the Nebraska and Texas actions are substantially identical. To resolve the controversy in either case, the respective court must interpret the mortgage contract in light of the federal regulations governing the payment of mortgage insurance premiums. Although the identity of issues between the pending suits is an important factor in determining whether to stay this proceeding, it is not, in and of itself, determinative of this issue. *National Union Fire Insurance Company v. Lippert Brothers, Inc., supra,* 233 F.Supp. at 654. This Court must, therefore, consider other factors to determine whether this action should be stayed.

Whether this Court can provide a comprehensive determination of the issues involved in these cases is another factor which must be considered by this Court. *Kerotest Manufacturing Company v. C–O–Two Company, supra,* 342 U.S. at 183, 72 S.Ct. at 221; *Employers Mutual Casualty Company v. El Dorado Springs R–2 School District, supra,* 264 F.Supp. at 672. The instant action should not be stayed if this Court can provide a more complete determination of the issues involved.

Lomas contends that the Texas court can provide the more complete resolution of this controversy. This contention is based on the fact that two interested parties, who are not subject to this Court's jurisdiction, have moved to intervene in the Texas ac-

tion. These intervenors are the two Texas banks in which the refund money obtained by Lomas is deposited. Lomas argues that this Court's decision would not provide a comprehensive resolution of this controversy, since it would not legally bind these Texas banks. Lomas, therefore, concludes that a plaintiff's judgment in this Court would result in a second action in Texas to force these banks to turn over the refund money in their possession.

The absence of the Texas banks in the instant suit is not a factor justifying a stay. This Court has *in personam* jurisdiction over Lomas. Any judgment against Lomas, therefore, may be enforced against Lomas' assets wherever found. Since the Texas bank's interest in this law suit is limited to the funds which they possess, this Court's judgment could be enforced against Lomas' other assets without the need for additional litigation involving the banks. In addition, these banks are not actually parties in the Texas action since their requests to intervene have not been granted by the Texas court. This Court has not been informed of the basis for these motions, and should not attempt to determine whether intervention is proper. This Court, however, does not feel that it is appropriate to defer to the Texas action based on the mere possibility that additional parties may be allowed to intervene in that action. For these reasons, the Court is of the opinion that the present action can provide as comprehensive a determination as the Texas action.

With respect to the issue of which court can provide the more comprehensive determination, the plaintiff contends that the Nebraska action is superior, since the Texas court's jurisdiction is limited by 28 U.S.C. § 1655.

This Court's consideration of this argument will be based on the assumption that the Texas court will find that it has jurisdiction under § 1655. This statute permits service on a defendant who is not within the court's personal jurisdiction but who owns property within the court's district. Creighton-Omaha argues that a suit brought under § 1655 is an *in rem* action

and that any judgment entered in such an action only binds the plaintiff to the extent of its property within the state. The plaintiff, therefore, concludes that the Nebraska action is superior since this Court has *in personam* jurisdiction over the defendant.

■ The plaintiff's argument is only partly correct. Any judgment entered in the Texas action would be limited to the property found in Texas only if the plaintiff, Creighton-Omaha, fails to actually litigate the merits of the Texas action. 14 *Wright & Miller* § 3635 (1976). However, if the plaintiff appears in the Texas action to litigate the merits, any judgment would be personally binding on the plaintiff. *Sherman v. Kirshman*, 369 F.2d 886, 890 (2d Cir. 1966); *Anderson v. Benson*, 117 F.Supp. 765, 770 (D.Neb.1953) *appeal dismissed* 215 F.2d 752 (8th Cir. 1954). The record in the instant action does not reveal whether Creighton-Omaha has made a general appearance in the Texas action. Rather, it appears that Creighton-Omaha has appeared in the Texas action solely for the purpose of contesting jurisdiction. Such an appearance does not amount to a general appearance which subjects the plaintiff to the Texas court's *in personam* powers. 14 *Wright & Miller* § 3632 (1976). Although the plaintiff has not yet made a general appearance in the Texas action, it is not certain that the plaintiff would refrain from contesting the merits in the Texas court if that court has jurisdiction under § 1655. It is, therefore, impossible for this Court to determine whether a Texas judgment would be limited to the Texas property, since the plaintiff may, at a later date, decide to contest the merits in Texas. Under these circumstances, this Court is of the opinion that the jurisdictional bases of the Texas and Nebraska actions should be treated as providing an equally comprehensive determination of the instant controversy.

Based on the preceding discussion, this Court is of the opinion that both the Nebraska court and the Texas court can provide a comprehensive determination of the instant controversy. In drawing this conclusion, the Court has assumed that the Texas court has jurisdiction. However, in fact, the issue of the existence of the Texas court's jurisdiction under § 1655 is being contested in the Texas court, and has yet to be resolved by that court. Although this Court will not discuss the merits of this issue, the uncertain status of the jurisdiction of the Texas court is a factor mitigating against a stay of the instant proceeding, since this Court clearly has jurisdiction over Lomas. *See Krey Packing Co. v. Hamilton*, 572 F.2d 1280, 1284 (8th Cir. 1978). Under these circumstances, a stay of the present proceeding may harm Creighton-Omaha, since the Texas court may ultimately determine that it had no jurisdiction. Creighton-Omaha would then have lost its opportunity to quickly resolve this dispute, despite the fact that it had sued in a court clearly having jurisdiction. This Court, therefore, finds that the possibility that the Texas court may not have jurisdiction is a factor which this Court, in exercising its equitable discretion, may weigh in denying the defendant's request for a stay.

■ Another important factor in determining whether to stay a proceeding pending litigation in another court is the convenience of the parties and their witnesses. *Krey Packing Co. v. Hamilton, supra*, 572 F.2d at 1284; *National Union Fire Insurance Company v. Lippert Brothers, Inc., supra*, 233 F.Supp. at 655. The mortgage agreement which is at issue in both of these actions was executed in Omaha. All of the negotiations leading up to the execution of the agreement occurred in Omaha. *Affidavit of David M. Brintnall* [Filing # 10]. It therefore may be assumed that many of the persons who witnessed these negotiations would be found in Omaha. In addition, Creighton-Omaha's only place of business is in Omaha, and Lomas does business in Omaha. Texas, in contrast, has very few contacts with the subject matter of the present litigation. Although Lomas' principal place of business is in Texas, Lomas' Florida office was primarily responsible for the negotiations with Creighton-Omaha. The primary contact between Texas and the in-

stant litigation is the bank accounts into which Lomas deposited the refund money which is at issue in these cases. In light of these limited contacts with Texas, this Court is of the opinion that, on the whole, Nebraska will provide a more appropriate forum for the litigation of this controversy.

The parties' dealings prior to the instigation of litigation must also be considered in determining whether a stay is appropriate. In the instant action, the affidavits and documents submitted by the parties show that on March 11, 1976, Creighton-Omaha informed Lomas of its intent to seek judicial resolution of this controversy if the matter could not be amicably resolved. The parties then exchanged legal opinions, but were unable to resolve their differences. Following this exchange, counsel for Creighton-Omaha told counsel for Lomas that he planned to approach the Creighton-Omaha Board at its next scheduled meeting to determine if the plaintiff still wished to sue. Before this Board meeting was held, Lomas filed suit in the Texas federal district court. From these facts, it may be inferred that the Texas declaratory judgment action was filed in anticipation of suit by Creighton-Omaha.

The fact that Lomas filed suit in Texas in anticipation of suit by Creighton-Omaha is an equitable factor which counsels against granting a stay in the instant proceeding. *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978), *cert. den.* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Amerada Petroleum Corporation v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967), *cert. den.* 389 U.S. 1039, 88 S.Ct. 776, 19 L.Ed.2d 828 (1968); *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D. N.Y.1977), *aff'd* 573 F.2d 1288 (2d Cir. 1978); *Washington-Summers, Inc. v. City of Charleston*, 430 F.Supp. 1013, 1017 n.1 (S.D. W.Va.1977). This Court is of the opinion that Creighton-Omaha's communications with Lomas were bona fide attempts to resolve this controversy out of court. Granting a stay in the instant case would tend to discourage such prelitigation settlement negotiations.

[T]he procedure followed by [Creighton-Omaha and its attorneys] is commendable. As federal court calendars become increasingly burdened, attorneys should exercise a correspondingly increased responsibility to attempt to resolve disputes without using limited judicial resources to decide issues which might, by responsible discussions between reasonable people, be settled out of court. . . . Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already drafted complaint. *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742, 747–48 (S.D. N.Y.1977).

This Court will, therefore, consider the fact that the Texas action was initiated in anticipation of a suit by Creighton-Omaha as a factor weighing in favor of denying the stay.

■ With respect to this point, the defendant strongly contends that its filing of suit in anticipation of Creighton-Omaha's suit should not be considered in determining whether a stay is appropriate. The defendant first argues that this factor is not relevant unless the filing of the Texas action was in breach of an agreement not to sue. The case law, however, does not impose such a requirement. Rather, the case law indicates that knowledge of another's intent to sue is a factor to consider in granting a stay, when that knowledge results in the filing of suit prior to one's opponent. *See, e. g., Amerada Petroleum Corporation v. Marshall, supra*, 381 F.2d at 661. The defendant also argues that its anticipatory filing of the Texas action should not be considered unless this filing was in a forum having few contacts with the controversy. This Court, however, is of the opinion that no such requirement exists. The anticipatory filing of the Texas action and the Texas forum's contacts with this controversy are separate and independent factors

which this Court should consider in determining whether a stay is appropriate. *See Factors, Etc., Inc. v. Pro Arts, Inc., supra,* 579 F.2d at 219; *Columbia Pictures Industries, Inc. v. Schneider, supra,* 435 F.Supp. at 746–51.

The final factor which this Court must consider in determining whether a stay is appropriate is the sequence in which these suits were filed. In the instant case, the Texas action was filed prior to the Nebraska action. This fact alone, however, does not conclusively preclude this Court from allowing the Nebraska action to proceed. *Krey Packing Company v. Hamilton, supra,* 572 F.2d at 1284. Rather, the priority of commencement factor is significant in only limited situations. This limited scope is illustrated by this Court's holding in *National Union Fire Insurance Company v. Lippert Brothers*:

> ". . . If after an overall balance of the comparative utility of the two actions, the court is unable to say that one is superior to the other, then it may properly employ the chronological test. For since, in that event, the two actions are equally beneficial, and since two or more *in personam* actions may proceed concurrently (although a multiplicity of actions is undesirable), the court may apply the rule of thumb that if the declaratory action was first commenced, jurisdiction should be retained—otherwise that it should dismiss the declaratory action." 6 Moore's Federal Practice 3042 (2d ed. 1953).
>
> *National Union Fire Insurance Company v. Lippert Brothers, supra,* 233 F.Supp. at 655–56.

Since this Court is of the opinion that a balance of the equities in this case favors proceeding with the Nebraska action, the commencement priority of the Texas action is not a factor weighing against the continuation of the Nebraska proceeding.

The preceding discussion lists the various factors which this Court, in exercising its equitable discretion, must carefully weigh to determine whether the Nebraska action should be stayed. Having thorough-

ly reviewed these factors, this Court is of the opinion that the Nebraska action should be allowed to proceed. In weighing the equities of this case, this Court found several factors to be of particular significance. The fact that Lomas filed the Texas action in anticipation of suit by Creighton-Omaha weighed in favor of the Nebraska action. In addition, the forum chosen by Lomas had a slight connection with the controversy involved here. Finally, the uncertain status of the Texas court's jurisdiction mitigated against preventing Creighton-Omaha from expeditiously resolving this controversy in the forum of its choice. For these reasons, this Court is of the opinion that this action should not be stayed.

An order will be issued contemporaneously with this Memorandum Opinion.