DONALDSON, LUFKIN & JENRETTE, INC. and Donaldson, Lufkin & Jenrette Securities Corporation, Plaintiffs,

v.

LOS ANGELES COUNTY and Sol Levin, Defendants.

No. 82 Civ. 2861 (DNE).

United States District Court, S. D. New York.

July 8, 1982.

---

Davis, Polk & Wardwell, New York City (Robert B. Fiske, Jr., New York City, of counsel), for plaintiffs.

Cleary, Gottlieb, Steen & Hamilton, New York City (Edmund H. Kerr, New York City, of counsel), for defendants.

1. Jurisdiction of this action is predicated on diversity of citizenship, 28 U.S.C. § 1332, and section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

## MEMORANDUM OPINION

EDELSTEIN, District Judge:

The instant action was filed by Donaldson, Lufkin & Jenrette, Inc., and Donaldson, Lufkin & Jenrette Securities Corp. (collectively, "DLJ") against Los Angeles County ("LA") and Sol Levin, an employee of LA, on May 4, 1982. An earlier action was filed by LA against DLJ and Douglas J. Robbins, a DLJ representative, on April 26, 1982 in the Central District of California ("California action"). On May 17, 1982 LA moved under Fed.R.Civ.P. 13(a) to dismiss or stay the instant action on the ground that the claims in DLJ's complaint are compulsory counterclaims in the California action. On May 18, DLJ moved herein to enjoin the California action on the ground that the California action was anticipatory of the present action.[1]

### FACTUAL BACKGROUND [2]

Sometime in 1978, LA opened a non-discretionary securities account with DLJ. The parties had an understanding that DLJ would not effectuate transactions for LA without prior authorization from an LA representative. Since the account was opened, LA has placed a substantial number of buy and sell orders for securities with DLJ. In 1981 and 1982 DLJ conducted over 2,000 transactions for LA involving securities valued in excess of $11 billion.

In late March 1982, a dispute arose between LA and DLJ. DLJ advised LA that their account had numerous "open positions," (i.e., securities transactions where LA had agreed to purchase a security but had not paid for it or had agreed to sell a security but had not delivered it). DLJ informed LA that as a result of these open positions, LA owed DLJ a substantial amount of interest, and DLJ demanded that the open positions be closed by LA and the interest paid. At the prevailing market rates, LA had to pay approximately $13.5 million to close the positions in their DLJ account.

2. This factual background is based upon the affidavits in support of the respective motions and upon statements of counsel. This summary does not constitute findings of fact.

In a letter dated March 15, 1982, under the signature of Elaine Lindsay, a securities investment analyst in the LA Treasurer's Office, LA disavowed twenty-four transactions ("repudiated transactions") involving government securities which DLJ had effectuated for the LA account. These transactions occurred between March 1981 and February 1982. LA claims, however, that DLJ fraudulently executed the twenty-four transactions as well as other transactions in LA's account without prior authorization from LA.[3]

On April 7 and April 8, representatives of the parties met in Los Angeles to attempt to resolve the dispute. On April 8, the parties entered into a written agreement that LA would settle the repudiated transactions, without prejudice to any claims it might have. LA's payment of $13.5 million was conditioned on DLJ providing an irrevocable and unconditional $13.5 million letter of credit to LA payable on demand within thirty days of its issuance. The stated purpose of the April 8 agreement was "[t]o preserve all rights and claims of each party against the other and to afford the parties additional time to investigate matters further."

Both parties allege that the April 8 agreement was an accommodation to the other party. DLJ alleges the agreement was an alternative to its immediately initiating suit for its $13.5 million claim, and that it wanted to allow LA to have an opportunity to investigate the status of its account. LA argues that it agreed to the April 8 arrangement on the basis of DLJ's representation that if the open positions were not closed, DLJ would have to reflect a large loss and that this loss would reduce its net capital ratio close to the regulatory limit.

On April 26, without prior notice to DLJ, LA filed an action against DLJ and Douglas J. Robbins, the DLJ registered representative responsible for the LA account, in the United States District Court for the Central District of California ("California action").[4] The complaint alleges various securities law violations and other statutory and common law violations concerning the transactions in LA's account at DLJ, and seeks damages of $17.5 million. LA asserts that the $4 million difference above the amount of the disputed transactions, represents LA's estimate of its losses caused by DLJ's other unauthorized securities transactions in the LA account.

On May 3, LA exercised its right to payment under the April 8 letter of credit and received back $13.5 million comprising the losses it had previously incurred in settling the disputed transactions.[5] The following day, DLJ filed the summons and complaint commencing the action against LA and Sol Levin, the Cash Management Officer for LA, in this court. DLJ's complaint herein seeks compensatory damages of $13.5 million and consequential and punitive damages caused by LA's alleged securities law violations, breach of its contract with DLJ, and gross negligence in the supervision of its investments.

On May 17, LA moved under Fed.R.Civ.P. 13(a) to dismiss or stay the instant action on the ground that the claims in DLJ's complaint should have been pleaded in the California action as compulsory counterclaims. On May 18, DLJ moved herein to enjoin LA from prosecuting the California action. The basis for DLJ's motion was that LA had allegedly brought the California action solely to secure a California forum in anticipation of claims it knew would be raised by

---

3. In addition to the twenty-four repudiated transactions which LA asserts that DLJ transacted without authorization, LA claims that DLJ made approximately 1750 other securities transactions, charged to the LA account without authorization from LA.

4. That action is captioned *County of Los Angeles v. Donaldson, Lufkin & Jenrette, Inc., et al.,* No. 82–2027–R (Hon. Manuel L. Real).

5. Accordingly, LA has conceded that $13.5 million of its claim in the California action "was satisfied after commencement of the California action by the County's draw on the letter of credit." Memorandum of Law in Opposition to Plaintiffs' Motion to Enjoin Prosecution of California Litigation, at 5.

DLJ as soon as LA drew down on the letter of credit.[6] On June 17, the court heard oral argument on LA's and DLJ's motions.

While the instant motions were being made before this court, the parties were making reciprocal motions in the California action. On May 20, DLJ filed in the California action a motion to dismiss or stay the prosecution of that action on the same basis argued before this court, namely that the California action was anticipatory. LA opposed DLJ's motion in California on essentially the same grounds that LA argued here.

On June 18, DLJ filed in the California action a copy of the transcript of the oral argument before this court on June 17, and DLJ requested Judge Manuel Real, before whom the California action is pending, to defer consideration of the motion filed in California until a ruling is made in this action. On June 21, after oral argument, Judge Real denied DLJ's motion to dismiss the California action. Judge Real then denied LA's oral application to enjoin prosecution of the instant action.

## DISCUSSION

■ The parties do not dispute that the accepted rule in this Circuit is that the forum where an action is filed first is accorded priority over subsequent actions arising out of the facts giving rise to the first filed action. *See Factors etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1978); *William Gluckian & Co. v. Int'l Playtex Corp.,* 407 F.2d 177, 178 (2d

Cir. 1969); *Mattel Inc. v. Louis Marx & Co.,* 353 F.2d 421, 423 (2d Cir. 1965), *cert. denied,* 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966). The parties also do not dispute that the pivotal issue presented to this court is whether there are present "special circumstances" to justify departure from the "first-filed" priority rule. *See, e.g., Factors etc., Inc. v. Pro Arts, Inc., supra,* at 219; *Columbia Pictures Industries, Inc. v. Schneider,* 435 F.Supp. 742 (S.D.N.Y.1977), *aff'd,* 573 F.2d 1288 (2d Cir. 1978).

DLJ argues that the filing of the California action by LA was in bad faith and in anticipation of DLJ's commencing a lawsuit once LA drew down on the letter of credit. DLJ contends that LA's conduct falls within the recognized special circumstances exception.[7]

Although the parties have contested the merits of the special circumstances issue, the parties have not focused on the issue of which court should make this determination. Nor does it appear from the court's research that this question has been addressed in the case law.

The issue as to which court should determine whether special circumstances exist is critical. At this juncture, two lawsuits are being prosecuted which involve essentially the same parties and the same issues. Judge Real has already rejected DLJ's claim that the lawsuit should be brought in New York because special circumstances warrant dispensing with the general rule that first filing prevails.[8] In effect, this court is being requested to rule on the "mirror image" of the motion which was

---

6. DLJ alleges that the April 8 arrangement contained an "implicit ... understanding" that "neither party would commence litigation during the period provided for mutual investigation." DLJ complaint at ¶ 30. Thus, DLJ asserts that LA's commencement of litigation during this period was done in bad faith and in order to establish jurisdiction in California in anticipation of the litigation it knew would be commenced by DLJ as soon as LA drew down on the $13.5 million letter of credit.

    LA asserts that it never represented that it would forego its right to adjudicate any claims that it had. Memorandum of Law in Support of Motion to Dismiss or Stay at 25.

7. In addition, each party argues that the balance of convenience favors the forum it selected. *See* Plaintiffs' Memorandum in Support of Motion to Enjoin Prosecution of California Action, at 27–28; Plaintiffs' Memorandum in Opposition to Motion to Dismiss or Stay, at 11–14; Memorandum of Law in Support of Motion to Dismiss or Stay, at 15–24.

8. Judge Real, at oral argument on DLJ's June 21 motion to dismiss the California action, expressed concern that the same issues were being argued in both courts.

presented to the California court, and which that court rejected.[9]

The general rule in this Circuit was set forth in *Meeropol v. Nizer*:

> Where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action.

505 F.2d 232, 235 (2d Cir. 1974) (citations omitted).[10]

Although there are decisions in this Circuit and elsewhere where the court hearing the second-filed action enjoined the court where the action was first brought, these cases are distinguishable. *See e.g., William Gluckian & Co. v. Int'l Playtex Corp., supra* (first-filed suit brought against a customer of an alleged patent infringer, while the second suit involved the infringer himself). None of the cases involve the situation present here where there are motions raising the same issue before both courts. In addition, in these other cases the issue of which court should determine the special circumstances question was not addressed.

Under these circumstances, the court is of the opinion that the district court hearing the first-filed action should determine whether special circumstances dictate that the first action be dismissed in favor of a later-filed action. Absent such a rule, there exists the possibility of inconsistent rulings on discretionary matters as well as duplication of judicial effort. *See Brierwood Shoe Corp. v. Sears, Roebuck & Co.*, 479 F.Supp. 563, 568 (S.D.N.Y.1979); *Columbia Pictures Industries, Inc. v. Schneider, supra* at 748. In the hearing before Judge Real on June 21, counsel for DLJ recognized this possibility in describing "a possible chaos resulting from conflicting decisions." Tr. at 7.

Accordingly, LA's motion to dismiss is granted and this action is dismissed without prejudice. DLJ's motion to enjoin or stay the California action is denied.

Settle order.

---

**9.** The parties did not argue whether Judge Real's ruling in the California action is res judicata or collateral estoppel with respect to the special circumstances issue. Because of this court's determination, the court expresses no opinion on this question.

**10.** The Court of Appeals in *Meeropol v. Nizer* did not confront the precise issue which is present here as to which court should make the special circumstances determination.