William F. BOLAND, Plaintiff,

v.

BANK SEPAH–IRAN (New York Agency), Defendant.

Charles W. BOYLE, Plaintiff,

v.

BANK SEPAH–IRAN (New York Agency), Defendant.

Nos. 84 Civ. 5836 (DNE), 84 Civ. 5838 (DNE).

United States District Court, S.D. New York.

Aug. 8, 1985.

Henry L. Bayles, New York City, for plaintiffs.

Kornstein Veisz & Wexler, New York City, for defendant; Daniel J. Kornstein, Marvin Wexler, John M. Devlin & Debra S. Weaver, New York City, of counsel.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Defendant has moved to dismiss these consolidated diversity actions for lack of subject-matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). The court has not addressed the motion because this case was improvidently removed from state court. In the context of considering whether to remand or dismiss this case, the court finds that United States[1] courts have subject-

---

1. For the purposes of this motion, the phrase "United States courts" includes both federal and state courts.

matter jurisdiction over plaintiffs' claims. The case is hereby remanded to the state court.

### FACTUAL AND PROCEDURAL BACKGROUND [2]

Plaintiffs are citizens of the United States and defendant Bank Sepah ("Sepah") is an Iranian corporation with an agency in New York. In January 1975, plaintiff William F. Boland (Boland) was hired as operations manager by Bank Sepah's New York agency. He was later promoted to assistant managing director. Plaintiff Charles W. Boyle (Boyle) was hired as operations manager by Bank Sepah's New York agency in January 1978.

After Ayatollah Khomeini and the Revolutionary Party took power in Iran in February 1979, the administration of Bank Sepah was replaced. Plaintiffs allege that the new bank administration, together with the "Islamic Revolutionary Committee of New York" (the "Committee"), sought to terminate their employment without cause. To that end, on March 30, 1979, the members of the Committee drew up a written report (the "Report") that accused plaintiffs of embezzlement and conspiracy, recommended their dismissal, and proposed that only Iranians be hired in the future. The Report was apparently circulated in New York and Iran. Boland was discharged on April 17, 1979 and Boyle on April 26, 1979.

On January 19, 1981, as part of the settlement of the Iranian hostage crisis,[3] the United States and Iran agreed to create an international arbitral tribunal at the Hague ("the Tribunal") for settling pending claims of the nationals of both countries against the government of the other. The Tribunal was given jurisdiction over claims arising out of debts, contracts, expropriations, and other measures affecting property rights.

Declaration II, Article II, ¶ 1. Claims in excess of $250,000 were to be filed by the claimant's government; claims for lesser amounts were to be filed by the claimant himself. Declaration II, Article III, ¶ 3. All claims had to be filed by January 19, 1982. *Id.* ¶ 4.

In November 1979, plaintiffs Boland and Boyle each brought five causes of action against Bank Sepah in New York State Supreme Court.[4] The claims for "abusive discharge" were dismissed. The claims for breach of employment contract were brought before the Tribunal by the State Department, pursuant to Declaration II, Article III, ¶ 4, and subsequently stayed by the state court pending their resolution in the Hague.

Arguing that only the Hague Tribunal could rule on plaintiffs' remaining tort claims—counts 4 and 5, Sepah brought motions to dismiss these claims for lack of subject-matter jurisdiction. These motions were denied. Defendant moved for and was granted reargument. Upon reargument, the State Supreme Court affirmed its prior decision. On appeal, the Appellate Division, First Department, affirmed the orders of the Supreme Court. Also, defendant's motion for summary judgment before the State Supreme Court was denied.

Plaintiffs' tort claims were removed to this court pursuant to 28 U.S.C. § 1441(d). This court finds that the removal was improvident and the case is consequently remanded.

### DISCUSSION

#### I. The Petition for Removal

■ A district court may remand a case to state court if at any time before

---

**2.** For the purposes of this motion, plaintiffs' allegations are accepted as true. *Transport v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1971); *United States v. New Wrinkle, Inc.,* 342 U.S. 371, 376, 72 S.Ct. 350, 352, 96 L.Ed. 417 (1952).

**3.** Two declarations comprise the settlement: (1) The Declaration of the Democratic and Popular Republic of Algeria (Declaration I) and (2) The Declaration of the Government and Popular Re-

public of Algeria Concerning the Settlement of Claims by the Government of the United States of America and the Government of the Islamic Republic of Iran (Declaration II).

**4.** Count 1 was for breach of employment contract, counts 2 and 3 were for abusive discharge, count 4 was for the libel of the Report, and count 5 was for the discriminatory actions taken because plaintiffs are Americans and Christians. Plaintiff's Memorandum of Law at 5.

final judgment it is found that the case was improvidently removed. 28 U.S.C. § 1447(c); *Martin v. Wilkes-Barre Publishing Co.,* 567 F.Supp. 304 (M.D.Pa.1983). In determining whether to remand, the district court should construe the removal statute strictly against removal and in favor of remand and give weight to the extent to which the action had progressed before the state court. *Shamrock Oil Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Corporacion Venezolana de Fomento v. Vintero Sales,* 629 F.2d 786, 790 (2d Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *Martropico Compania Naviera, S.A. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (Pertamina),* 428 F.Supp. 1035, 1037 (S.D.N.Y. 1977). Failure to comply with the time limitations for removal constitutes an improvident removal. *Irving Trust Co. v. Century Export & Import,* 464 F.Supp. 1232 (S.D.N.Y.1979).

▆▆▆ Section 1446(b) title 28 of the United States Code requires that the petition for removal be filed within thirty days of receipt of the initial pleading. Defendant received the complaint on December 17, 1981. Defendant's Petition for Removal. The petition for removal was not filed until August 15, 1984. Thus, defendant's petition was untimely.

There is one exception to section 1446(b): The thirty-day period may be extended if defendant shows cause. 28 U.S.C. § 1441(d); *Martropico Compania Naviera S.A., supra,* 428 F.Supp. at 1038. A showing of cause to justify an extension of the section 1446(b) time requirement is rarely found, in keeping with the practice of construing the removal statutes in favor of remand. In *Martropico, supra,* section 1441(d) became effective while the state action was pending, but more than thirty days after defendant received the complaint. 428 F.Supp. at 1037. The court ruled that the change effected by the removal statute was not a voluntary act of the plaintiff, and did not constitute "cause"

to extend the thirty-day period. *Id.* at 1038. Similarly, action by a state court that might be deemed to make a case removable does not justify extending the time period for removal. *Touche Ross & Co. v. Manufacturers Hanover Trust Co.,* 503 F.Supp. 222, 223 (S.D.N.Y.1980). To justify an extension of the thirty-day removal period, defendant must demonstrate some unusual set of circumstances. *See Gray v. Permanent Mission of the People's Republic of the Congo to the United Nations,* 443 F.Supp. 816, 821 (S.D.N.Y.), *aff'd mem.,* 580 F.2d 1044 (2d Cir.1978). In *Gray,* "cause" was shown because defendant was (1) not properly served, (2) did not understand its rights under American law, and (3) did not retain counsel until after default judgment was already entered. *Id.* at 820–21.

Defendant's petition for removal yields no evidence of such circumstances. Defendant notes that it was "apparently obliged, by the Algerian Declarations and otherwise, to exhaust [all] remedies before removing pursuant to 28 U.S.C. § 1441(d)." Defendant's Petition for Removal. The Algerian Declarations do not refer to an "exhaustion of remedies" requirement and defendant does not support this proposition with case law. Given the stringent requirements for a showing of cause, defendant's vague and unsupported allusions to an "exhaustion of remedies" requirement do not constitute "cause" as required by section 1441(d). *See Touche Ross & Co. v. Manufacturers Hanover Trust Co., supra,* 503 F.Supp. at 222; *Martropico Compania Naviera S.A., supra,* 428 F.Supp. at 1038; *Irving Trust v. Century Export & Import, supra,* 464 F.Supp. at 1240. Furthermore, it is clear that defendant's petition for removal should be rejected based on the extent to which this action had progressed in state court. *Corporacion Venezolana de Fomento v. Vintero Sales, supra,* 629 F.2d at 790. To maintain this suit in federal court after the extensive motion practice already conducted in state court would promote a duplicative and wasteful policy of

judicial administration.[5] *Corporacion Venezolana de Fomento v. Vintero Sales, supra,* 629 F.2d at 790; *Martropico Compania Naviera S.A., supra,* 428 F.Supp. at 1038; *Touche Ross & Co. v. Manufacturers Hanover Trust Co., supra,* 503 F.Supp. at 223.

■ Having determined that this case was not properly removed, this court must determine whether it should remand or dismiss the case. If state-court jurisdiction is found, the court will remand the case; if no jurisdiction is found, the case will be dismissed. *Bond v. Doig,* 433 F.Supp. 243 (D.N.J.1977); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (Civil) § 3739, at 570–71 (2d ed. 1985). In this case, the state court has jurisdiction if plaintiffs' tort claims can be maintained in United States courts instead of at the Hague Tribunal. The parties have addressed the issues involved in the jurisdiction of United States courts over plaintiffs' claims in conjunction with defendant's motion to dismiss. The same framework of discussion used by the parties in conjunction with the 12(b)(1) motion is adopted in considering whether to remand or dismiss.

## II

### Jurisdiction Over Plaintiffs' Claims

Defendant asserts, contrary to the rulings of the state courts, that (1) United States courts do not have jurisdiction to determine the jurisdiction of the Tribunal, (2) the Tribunal has jurisdiction, and United States courts therefore do not, over plaintiffs' tort claims, and (3) various policy arguments and the act of state doctrine preclude consideration of those claims by a United States court.

### A

#### The Jurisdiction of United States Courts to Determine Whether the Tribunal has Jurisdiction

■ United States courts have consistently engaged in interpretation of the jurisdictional provisions of the Algerian Declarations. *See, e.g., Rockwell Int'l Systems, Inc. v. Citibank, N.A.,* 719 F.2d 583, 585–87 (2d Cir.1983) (interpreting the Algerian Declarations and holding that United States courts have jurisdiction to grant preliminary injunctive relief in claims that may come before the Tribunal); *Hawaiian Agronomics Co. (Int'l) v. Government of Iran,* 518 F.Supp. 596, 598–99 (C.D.Cal. 1981) (determining that claims did not fall within the jurisdiction of the Tribunal and thus were properly before the district court); *Itek Co. v. First Nat'l Bank of Boston,* 511 F.Supp. 1341, 1346 (D.Mass. 1981) (interpreting the Algerian Declarations and executive orders as exempting cases involving standby letters of credit from the Tribunal's jurisdiction), *vacated on other grounds,* 704 F.2d 1 (1st Cir.1983) (court affirms finding of subject-matter jurisdiction and notes district court's power to issue injunctive relief).[6] Even when claims present novel jurisdictional issues,[7] American courts have the power to determine

---

5. It is notable that defendant did not petition for removal until after the state court denied its motions to dismiss and for summary judgment. To allow a defendant to remove the case after such extensive motion practice provides the defendant with a "second bite at the apple," a practice that is generally frowned upon. *See, e.g., Donaldson, Lufkin & Jenrette v. Los Angeles County,* 542 F.Supp. 1317 (S.D.N.Y.1982) (a district court hearing first-filed of two "mirror image" actions should determine whether first-filed action should be dismissed in favor of later-filed action to avoid inconsistent rulings and duplication of judicial effort). Such a practice is not only wasteful but also unfair to the plaintiff, who can not avail himself of the procedure of removal. *See* 28 U.S.C. § 1441.

6. Even *Gulf Ports Crating Co. v. Ministry of Roads and Transportation,* 674 F.2d 318 (5th Cir.1982), which noted in dicta that "[a]ny disputes as to the tribunal's jurisdiction are to be resolved by the tribunal itself," 674 F.2d at 320 n. 2, engaged in interpretation of the language of the Algerian Declarations and examined the intent behind them to arrive at its jurisdictional decision, *id.*

7. Apparently, the issue of the Tribunal's jurisdiction over tort claims arising out of contract has not previously been raised before the Tribunal.

whether a claim falls within the ambit of the Tribunal's jurisdiction. *See, e.g., Rockwell Int'l Systems, Inc. v. Citibank, N.A.,* 719 F.2d 583 (2d Cir.1983); *Itek Co. v. First Nat'l Bank of Boston,* 511 F.Supp. 1341 (D.Mass.1981), *vacated on other grounds,* 704 F.2d 1 (1st Cir.1983).

Defendant contends, *inter alia,* that the Tribunal has jurisdiction to determine jurisdiction over plaintiffs' *tort* claims because plaintiffs have invoked the power of the Tribunal by filing their *contract* claims at the Hague. Defendant's Memorandum of Law at 6. It is true that at least one court has interpreted Section 3 of Executive Order No. 12294, 46 Fed.Reg. 14111 (1981), as giving the Tribunal the power to decide whether a particular claim is within its jurisdiction. *See Jafari v. Islamic Republic of Iran,* 539 F.Supp. 209, 212 (N.D.Ill. 1982). But Section 3 of Executive Order No. 12294 refers only to those claims which are actually submitted to the Tribunal.[8] Article VII, ¶ 2 of Declaration II is clear on this point: "Claims referred to the Arbitral Tribunal shall, as of the date of filing such claims with the Tribunal, be considered excluded from the jurisdiction of the courts of Iran, or of the United States, or of any other court." While plaintiffs' contract claims have been referred to the Tribunal, their tort claims have not. Therefore, plaintiffs have not invoked the power of the Tribunal to adjudicate their tort claims. *See also* Stewart, *The Iran-United States Claims Tribunal: A Review of Developments 1983–84,* 16 Law & Pol'y Int'l Bus, 677, 746–47 (1984); *E-Systems, Inc. v. Iran,* Iranian Assets Litig.Rep. 6,103 (Andrews Publications) (Feb. 18, 1983) ("once a counterclaim has been initiated before the Tribunal, the subject matter of *that claim* is excluded from the jurisdiction of any other court") (emphasis added). Thus Executive Order No. 12294 does not preclude this court from deciding the proper jurisdiction for plaintiffs' tort claims.

Further support for the proposition that United States courts have jurisdiction to determine jurisdiction in this case is found in Article VI, ¶ 4 of Declaration II, which states that "[a]ny question concerning the interpretation or application of this agreement shall be decided by the Tribunal upon the request of either Iran or the United States." Article VI ¶ 4. Neither the United States nor, apparently, Iran has requested the Tribunal to decide this issue, as they have in prior jurisdictional disputes, *see, e.g., Itek v. First Nat'l Bank of Boston, supra,* 511 F.Supp. at 1346, 1347 (rejecting the view that jurisdictional disputes must be referred to the Tribunal even when the United States' position is that they may be heard in United States courts); Request of the United States for a Determination of the Tribunal's Jurisdiction Over Iranian Bank Standby Letter of Credit Claims, United States v. Iran, Iranian Assets Litig. Rep. (Andrews Publications) 5,763 (Dec. 3, 1982). Rather than urging that the Tribunal decide the instant jurisdictional issue, the Statement of Interest of the United States assures this court of its jurisdiction over plaintiffs' tort claims. Statement of Interest of the United States at 2, 9–10, May 19, 1983, Defendant's Reply Memorandum of Law. This statement is persuasive in a court's determination regarding the jurisdiction of the Tribunal. *See Gulf Ports Crating Co. v. Ministry of Roads and Transportation, supra,* 674 F.2d at 319 (affirming the district court, which followed a recommendation of the Statement of Interest of the United States as to the Tribunal's jurisdiction); *Itek Co. v. First National Bank of Boston, supra,* 511 F.Supp. at 1346 n. 14, 1347 (relying upon a statement of interest filed by the United States).

### B

### The Tribunal's Jurisdiction Over Plaintiffs' Tort Claims

■ Defendant contends that plaintiffs' claims are within the purview of the Al-

---

**8.** Executive Order 12294 reads, in relevant part: "Suspension under this Order of a claim or a portion thereof submitted to the Iran-United States Claims Tribunal for adjudication shall terminate upon a determination by the Tribunal that it does not have jurisdiction over such claim or such portion thereof." 46 Fed.Reg. 14111 (1981).

gerian Declarations and that American courts therefore do not have jurisdiction over those claims.

On first blush, Declaration I appears to provide the Tribunal with the foundation for a broad jurisdiction: "It is the purpose of both parties, within the framework of and pursuant to the provisions of the two Declarations of the Government of the Democratic and Popular Republic of Algeria, to terminate all litigation as between the Government of each party and the nationals of the other, and to bring about the settlement and termination of all such claims through binding arbitration." Declaration I, ¶ A. But the actual provision for the Tribunal's jurisdiction, in Declaration II, is less expansive:

An International Arbitral Tribunal ... is hereby established for the purpose of deciding claims of nationals of the United States against Iran and claims of nationals of Iran against the United States, and any counterclaim which arises out of the same contract, transaction or occurrence that constitutes the subject matter of that national's claim, if such claims and counterclaims are outstanding on the date of this agreement, ... and arise out of debts, contracts (including transactions which are the subject of letters of credit or bank guarantees), expropriations or other measures affecting property rights....

Declaration II, Article II, ¶ 1.

The Tribunal has counseled a restrictive interpretation of provisions establishing the scope of an arbitral tribunal. *Grimm v. The Government of the Islamic Republic of Iran,* Iranian Assets Litig.Rep. (Andrews Publications) 6,140 (Feb. 18, 1983). Specifically, the Tribunal has narrowly circumscribed the scope of the "arising out of contracts" clause, the only language in Article II, ¶ 1 that is disputed by the parties, Plaintiff's Memorandum of Law at 25; Defendant's Memorandum of Law at 16. *See, e.g., American Bell Int'l,* Iranian Assets Litig.Rep. (Andrews Publications) 8,717 (June 22, 1984) (counterclaim alleging improper influence to acquire contractual

privileges did not "arise out of contracts" for the purposes of Article II, ¶ 1); *Harza,* Iranian Assets Litig.Rep. (Andrews Publications) 5,958 (Jan. 21, 1983) (letter of credit guaranteeing a contractual transaction did not "arise out of" that transaction); *White Westinghouse Int'l Co. v. Bank Sepah-Iran, New York Agency,* Iranian Assets Litig.Rep. (Andrews Publications) 4,880, 4,881 (July 2, 1982) (the Tribunal does not have jurisdiction over a counterclaim alleging damages arising from plaintiff's "illegitimate access" to bank documents). Even a counterclaim for tax and social security obligations incurred on account of specific provisions in a contract is not deemed to "arise out of" that underlying contract for the purposes of Article II, ¶ 1. *Pereira v. Islamic Republic of Iran,* Iranian Assets Litig.Rep. (Andrews Publications) 8,184, 8,185 (Mar. 23, 1984) (Mosk, J., concurring). Indeed, the Tribunal has made it clear that a claim or counterclaim only "arises out of contract" if the contract, and the contract alone, imposes the obligations that form the basis of the suit. *Pereira v. Islamic Republic of Iran, supra,* Iranian Assets Litig.Rep. at 8,185–86 (Mosk, J., concurring); *T.C.S.B. v. Islamic Republic of Iran,* Iranian Assets Litig.Rep. (Andrews Publications) 8,230, 8,235–36 (Mar. 16, 1984). A claim based upon the application of the law to the particular situation of one party—even if that claim is closely related to the contract and "but for" the contract, the claim would not exist—does not "arise out of contract," and the Tribunal does not have jurisdiction over such claims. *T.C.S.B. v. Islamic Republic of Iran, supra,* Iranian Assets Litig.Rep. at 8,235–36; *Pereira v. Islamic Republic of Iran, supra,* Iranian Assets Litig.Rep. at 8,185–86 (Mosk, J., concurring).

In addition, the Tribunal has suggested that if Iran and the United States had intended the Tribunal to have jurisdiction over claims for damage to persons as opposed to property, the two governments would have used explicit language to that effect in the Algerian Declarations. *See Grimm v. Government of the Islamic Republic of Iran,* Iranian Assets Litig.Rep.

(Andrews Publications) 6,141–42. Consistent with this view, the Tribunal has been notably unwilling to entertain tort claims involving claims for damage to persons. *See id.; Hoffland Honey Co. v. Nat'l Iranian Oil Co.*, Iranian Assets Litig.Rep. (Andrews Publications) 6,011 (Jan. 26, 1983). Consequently, it is not unreasonable to assume that had jurisdiction over tort claims arising out of contracts been intended for the Tribunal, express language to that effect would also have been incorporated into the Algerian Declarations.

It is not doubted that plaintiffs' tort claims are *related* to plaintiffs' dismissal and thus *related* to their employment contract. First, the reasons for plaintiffs' dismissal, if their allegations are correct, are also the grounds for their discrimination claim, viz. the fact that they are not Iranians. Second, according to plaintiffs' view, the allegedly libelous Report was drawn up to provide a pretext for the dismissal of the plaintiffs. Plaintiff Boland's Complaint at ¶ 10; Plaintiff Boyle's Complaint at ¶ 10. But it is equally clear that, as in *Pereira v. Islamic Republic of Iran, supra*, plaintiffs' tort claims are based upon the application of the law to their particular situation, and not upon specific provisions of their employment contract. The obligations of Sepah that form the basis for plaintiffs' tort claims—the "obligation" to refrain from libel and from discrimination—do not arise out of provisions of the employment contract and thus the tort claims do not "arise out of contract" according to the Tribunal's interpretation of that phrase. This finding coupled with the

Tribunal's reluctance to entertain tort claims lead this court to the conclusion that the Tribunal does not have jurisdiction over plaintiffs' tort claims.

### C

#### The Act of State Doctrine

 Finally, defendant contends that the act of state doctrine bars United States courts from reviewing plaintiffs' claims.[9] Under the act of state doctrine, "courts of one country will not sit in judgment on the action of the government of another done within its own territory." *Underhill v. Hernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897). The doctrine does not preclude such a judgment when the act in question concerns a thing or interest located beyond the confines of the foreign state's territory. Restatement (Second) of Foreign Relations § 43(1) (1965). Courts take a pragmatic approach in determining whether an act of a foreign country is an extraterritorial one. *Maltina Co. v. Cawy Bottling Co.*, 462 F.2d 1021, 1027 (5th Cir.), *cert. denied*, 409 U.S. 1060, 93 S.Ct. 555, 34 L.Ed.2d 512 (1972). The determining factor is where the act comes to fruition. *Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co.*, 392 F.2d 706, 716 (5th Cir.), *cert. denied*, 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968). If the act does not come to complete fruition within a foreign state, then the Act of State Doctrine will not be applied. *See, e.g., United Bank Ltd. v. Cosmic Intern Inc.*, 542 F.2d 868, 873 (2d Cir.1976) (act of state doctrine does not apply when confiscation ordered by foreign state occurs in United States if

---

**9.** Defendant, relying on *Islamic Republic of Iran v. Pahlavi*, 94 A.D.2d 374, 464 N.Y.S.2d 487 (1st Dept.1983), also asserts that plaintiffs' claims should be barred from this forum because of their political nature. Defendant's Memorandum of Law at 36–39. *Pahlavi* concerned the claims of the current government of Iran against the former Shah and his family. *Id.* 464 N.Y.S. at 488. *Pahlavi* thus has little bearing on the instant claims, involving American nationals employed in the United States by a foreign corporation with offices in the United States.

Defendant also notes that the purpose of the Algerian Declarations was to remove claims

such as the plaintiffs' from the fora of the sovereign adversaries and bring the claims before the more neutral and depoliticized forum of the Tribunal. Defendant's Memorandum of Law at 23. Yet, as noted above, the Tribunal itself has attenuated rather than broadened its jurisdiction, allowing those claims that fall outside its jurisdiction to be heard in Iranian or American courts, *see* Declaration II, Article VII, ¶ 2; Executive Order 12,294, reprinted in 50 U.S.C. § 1701 (1982); Stewart, *The Iran-United States Claims Tribunal: A Review of Developments 1983–84*, 16 Law & Pol'y Int'l Bus., 677, 749 (1985).

such act is inconsistent with American law and policy); *Maltina Co. v. Cawy Bottling Co.*, 462 F.2d 1021 (5th Cir.1972) (a confiscatory decree of a foreign country aimed at that country's extraterritorial nationals is not within the ambit of the Act of State Doctrine); *F. Palicio y Compania, S.A. v. Brush*, 256 F.Supp. 481, 488 (S.D.N.Y.1966) (act of state doctrine did not apply because the trademarks in question, registered in this country, had a local identity and situs apart from the foreign manufacturer), *aff'd mem.*, 375 F.2d 1011 (2d Cir.), *cert. denied*, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88 (1967).

The act that precipitated plaintiffs' claims was the decision by the new administration of Bank Sepah to discharge them. Plaintiff's Complaint at 3. This act occurred in Iran. *Id.* However, the actual act of discharging and the writing and some of the publication of the allegedly libelous Report had their situs in New York. Thus defendant's decision in Iran to discharge plaintiffs and its request for the Report did not come to complete fruition in Iran. Further, plaintiffs' claims mostly concern the extraterritorial effect of the decision by defendant to discharge plaintiffs. *See Zwack v. Kraus Bros. and Co.*, 237 F.2d 255, 259 (2d Cir.1956). United States courts are thus not precluded from examining the validity of plaintiffs' complaint, Restatement (Second) of Foreign Relations § 43(1), and they need give effect to defendant's act only if that act is consistent with the policy and law of the United States. *Id.* § 43(2). Because libel and discrimination are not consistent with this country's law, United States courts need not give effect to defendant's act, and the state court is not prevented from hearing plaintiffs' claims.

## COSTS

██ Local Rule 25(a) provides that defendants "shall file a bond in the penal sum of $500.00, conditioned that the defendant or defendants will pay costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed." Given the fact that the issues briefed in the motion to dismiss were relevant to the remand of this action, the costs to be imposed against the defendant shall be limited to the penal sum of $500.00.

## CONCLUSION

Defendant's petition for removal was improvidently filed. Therefore, we do not consider its motion to dismiss for lack of subject-matter jurisdiction. The Tribunal does not have jurisdiction over plaintiffs' tort claims, and the act of state doctrine and other policy rationales do not preclude United States courts' jurisdiction. Therefore, the state court has jurisdiction over plaintiffs' tort claims, and the case is remanded to the state court. Costs of $500.00 are assessed against defendant for the improvident removal of this action.

SO ORDERED.