UNITED STATES of America, Plaintiff,

v.

John T. NORTON, M.D., Defendant.

Civ. A. No. 84-K-1576.

United States District Court,
D. Colorado.

Aug. 11, 1986.

Richard J. Nolan, Special Asst., U.S. Atty., Denver, Colo., for plaintiff.

Albert A. Dawkins, William L. McBride, Denver, Colo., for defendant.

## INJUNCTION

KANE, District Judge.

At 10:00 a.m. on May 20, 1986 I made Findings of Fact and Conclusions of Law as required by the Federal Rules of Civil Procedure in the above captioned case. Those findings and conclusions are specifically incorporated herein by reference. At that time I specifically reserved the right to specify the terms and conditions of the injunction.

Since the date I made findings, I referred this case to the probation department of this court for a detailed investigation and report. Both plaintiff and defendant were given full opportunity to review the report and make any objections thereto they wished. No objections were made.

■ In addition to other relevant data, the report discloses that the defendant is a highly respected physician, 59 years of age, who has practiced medicine in Denver, Colorado since 1954. He has a general practice and a recognized specialty in bariatric medicine. He has a large number of patients who come from all walks of life. Between May 20 and July 21, 1986 the probation department received numerous letters from Dr. Norton's patients. All of these letters were annexed to the probation report and are made a part of the record in this case. Each letter shows that Dr. Norton is a devoted physician who has the welfare of his patients foremost in mind. I have read each of these letters. The loyalty and devotion they show to this defendant as a medical practitioner weighs heavily on my mind in formulating the conditions of this injunction. Clearly, it is not in the public interest to deprive these patients of the dedicated care they have received and earnestly desire to continue to receive. It is not in the public interest to put this physician out of business.

Equally clearly, it is not in the public interest to have this defendant continue with his poor record keeping practices. There is not a shred of evidence to suggest that this defendant is involved in any kind of illicit drug business. If such were the case, my findings and rulings would be entirely different.

What the evidence does show is that the defendant has been somewhat sloppy and inaccurate in his record keeping due to a heavy patient load, employment of marginally experienced and barely trained help and inadequate record keeping devices and systems. The evidence also shows that the Drug Enforcement Administration has been erratic and sometimes heavy-handed in its enforcement activities with respect to this defendant. Enforcement has been accompanied by threats of criminal prosecution, inaccurate reports to pharmaceutical distributors and demands for license revocation. While, however, the government's conduct has been so characterized the defendant, whether through anger or frustration, has baited the government agents

with his bruskness and disparagement of their performing their statutory duties.

Such are the conditions upon which judicial intervention was predicated. I perceive the best interests of justice in this case to be ameliorative rather than punitive. Accordingly, the terms and conditions of this injunction are designed to terminate the controversy between the parties, assure the defendant's full compliance with statutory requirements and preserve the rights of the large number of defendant's patients to continue in his care.

Following the trial of this case and my bench ruling, the defendant has taken commendable steps to correct his record keeping practices. According to the probation department report, he has secured the services of a computer consulting firm, he has purchased an IBM computer system at an initial cost of $15,000.00, he has had the system installed and he has changed his record keeping practices.

Accordingly, the defendant is hereby enjoined and required to do the following:

1. On or before September 5, 1986 on a date and time to be given to the office of the Drug Enforcement Administration in Denver, Colorado at least ten days in advance, the defendant shall have a complete inventory of all controlled substances taken by and under the direct supervision of an independent inventory company. Officials of the Drug Enforcement Agency are permitted to be present and such presence is expected by the court during the conduct of this inventory. The expense of this independent inventory shall be born by the defendant.

2. On or before September 15, 1986 the figures obtained from the inventory shall be used as the data base for the defendant's computerized inventory and for further record keeping and compliance purposes by the Drug Enforcement Administration. A copy of this data base shall be furnished to the local office of the Drug Enforcement Administration.

3. On or before the 15th day of each month thereafter until August 16, 1987, a copy of the then current computer printout of inventory shall be furnished to the same local office of the Drug Enforcement Administration.

4. At any times until August 16, 1987 during normal office hours upon the requests of employees of the Drug Enforcement Administration, the defendant shall permit such employees to scan the computer inventory and shall thereafter provide a print out of such inventory by the end of the normal office day immediately next following the date of such inspection.

5. Beginning immediately, the defendant shall maintain a separate file maintained in chronological order of each receipt, invoice and bill of lading showing the date and time of receipt, the quantity and identity of manufacturer and distribution, and the identity of the person actually receiving the delivery of each and every controlled substance received by defendant whether used in his medical practice or not so used. This file shall be open to inspection by employees of the Drug Enforcement Administration at any time during normal office hours.

6. Defendant shall maintain copies of all dispensing slips of controlled substances and shall make them available for inspection by D.E.A. employees at any time during normal office hours. These dispensing slips must be signed by defendant or another licensed medical doctor. They may be kept in order according to date and time of signature or filed according to the name of the patient who is the recipient of the prescription.

7. Under no circumstances shall defendant permit any controlled substances to be prescribed or dispensed to anyone except by the defendant or another licensed medical doctor acting in his place and stead.

8. The record keeping and compliance with this injunction and the relevant federal statutes and regulations shall be reviewed in open court at 8:00 a.m. on Friday, September 11, 1987. At that time the court may modify the terms and conditions of this injunction, terminate it or continue it in full force and effect. The court specifically

reserves determination of the amount of fines or penalties, if any, to be imposed until the same time as this injunction is reviewed or sooner if contempt hearings should ensue during this interim.

9. At all times, the defendant shall comply substantially with all applicable provisions of the Controlled Substances Act and the regulations in the Code of Federal Regulations enacted in furtherance of that Act.

10. This action was commenced on August 2, 1984 and assigned to the Honorable John P. Moore, United States District Judge. On May 15, 1985 Judge Moore was elevated to the Court of Appeals. Much later this case was assigned to me. On May 5, 1986 an order to show cause was issued to the defendant, John T. Norton, M.D., in an administrative proceeding, docket number 86–48. Currently, a hearing is scheduled before an administrative law judge in Washington, D.C. Defendant has moved me to enjoin this administrative proceeding.

■ I have no desire whatever to interfere with the work of an administrative law judge in matters rightly brought before him. I assume with equal certitude that no administrative law judge would seek to interfere with the proper exercise of jurisdiction by a United States District Judge. The difficulty in this case is that the Drug Enforcement Administration invoked the equitable jurisdiction of this court and thereafter sought to maintain a parallel administrative proceeding apparently based on the same allegations.

Under the doctrine of primary jurisdiction courts will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal before the decision of that question by the administrative tribunal, (1) where the question demands the exercise of administrative discretion requiring the special knowledge, experience, and services of the administrative tribunal to determine technical and intricate matters of fact, and (2) a uniformity of ruling is essential to comply with the purposes of the regulatory statute administered. As stated in *United States v. Western P.R.Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, (1956), the doctrine applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its use.

In *I.C.C. v. J.B. Montgomery, Inc.*, 483 F.Supp. 279 (D.C.Colo.1980), Judge Carrigan stated:

As a general rule the doctrine of primary jurisdiction does not apply when the agency which is alleged to have primary jurisdiction is a plaintiff before the court: "Ordinarily, the doctrine of primary jurisdiction attaches in instances where the case is taken into the courts without any direct involvement of the administrative agency. It has been suggested by one commentator that, in cases where the appropriate administrative body is before the court, the doctrine should not apply since [the] principal function of the rule, acquainting the court with the agency's position concerning the matter, has been satisfied. Davis, Administrative Law Treaties, Volume 3 § 1902, p. 14, note 41 (1951). Therefore the doctrine does not apply when the agency itself is plaintiff.' *C.A.B. v. Aeromatic Travel Corp.*, 489 F.2d 251 (2d Cir.1974). In the present case, the Commission has considered what action it should follow and [is] determined to pursue a judicial rather than administrative procedure." *Interstate Commerce Commission v. All-American, Inc.*, 505 F.2d 1360, 1362–63 (7th Cir.1974).

This case does not involve scientific findings, expert analysis, deep policy considerations, etc.. It simply is not necessary for any factual determinations to be made by the DEA. In order to fashion a legal remedy and court injunction, a federal district court is competent enough to perform.

The power of a federal court to enjoin an administrative proceeding in the circumstances of the instant case is a well settled point of law. In *S.E.C. v. G.C. George Securities, Inc.,* 637 F.2d 685 (9th Cir.1981) the administrative agency (SEC) brought an action in federal court though it had the option of commencing administrative proceedings instead. The Ninth Circuit ruled the district court had the power to issue an injunction barring agency proceeding so as not to disturb the federal court's jurisdiction. The court stated the law as follows:

> When the SEC initiated the present case in 1975, it had the choice of proceeding administratively (15 U.S.C. §§ 77v(a), 78aa). The SEC chose to first proceed against Pennaluna [defendant] in the district court. In doing so, jurisdiction was conferred in the district court over the parties and the subject matter ... it expressly retained jurisdiction to insure compliance with the agreement. In addition to this retained jurisdiction, the district court also had the authority to consider Pennaluna's request for relief under the All Writs Act. 28 U.S.C. § 1651(a).

*S.E.C.* at 687.

Pennaluna's request to which the court was referring, was for an injunction barring the administrative proceedings of the S.E.C.

The court then dropped a footnote in order to explain the federal court's inherent equitable power:

> In addition to the district courts' power under § 1651, the federal courts also possess inherent equitable power. "The federal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws ... *The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief."* (emphasis add-

ed) (footnotes omitted) *S.E.C. v. Wencke,* 622 F.2d 1363, 1369 (9th Cir., 1980).

*Id.* at 687.

The court explained further:

> This Act allows federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdiction." We have interpreted § 1651 as authorizing a district court to enjoin a party from attempting to relitigate a cause of action relating to the same subject matter of an earlier action. *See Clinton v. United States,* 297 F.2d 899, (9th Cir.1961), *cert. denied,* 369 U.S. 856, 82 S.Ct. 944, 8 L.Ed.2d 14. And, we have also said that a district court's "powers under § 1651 should be broadly construed." *Hamilton v. Nakai,* 453 F.2d 152, 157 (9th Cir.1972), *cert. denied,* 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed. 332.

*Id.* at 688.

In *Clinton v. United States,* 297 F.2d 899, (9th Cir.1961), *cert. denied,* 369 U.S. 856, 82 S.Ct. 944, 8 L.Ed.2d 14, the case which the court in *S.E.C., supra,* cites as authority, the appeals court held the lower federal district court properly enjoined a seaman from commencement or prosecution of any cause of action relating to subject matter in prior final decisions of certain federal courts. The court interpreted § 1651 as giving federal courts that equitable power.

Clearly, a federal court possesses the power and authority to enjoin administrative proceedings begun after the federal court properly assumed jurisdiction.

The law states:

> Where an action is brought in one federal court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second. *Meerpol v. Nizer,* 505 F.2d 232, 235 (2nd Cir.1974). *See also Donaldson, Lufkin & Jerette, Inc. v. Los Angeles County,* 542 F.Supp. 1317 (D.C.N.Y.1982) (first court has jurisdiction to enjoin prosecution of second action); *Dresser Industries, Inc. v. Ford Motor Co.,* 530 F.Supp. 303 (D.C.Tex.

1981) (federal courts possess inherent equitable power to compel a party within its jurisdiction to refrain from prosecuting related action in another jurisdiction when necessary to aid its jurisdiction, protect or effectuate its process, or prevent wasteful and useless duplication of time and effort).

A federal court has the power to stay administrative action. *See Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942). This power to stay administrative action may be enough to accomplish the goal of keeping the administrative proceeding from interfering with the exercise of the court's jurisdiction. The government, however, has already requested the administrative hearing be put off until September 1, 1986. Thus, at the very least, interference with this action is uncertain.

The Supreme Court has held a federal court, "as part of its traditional equipment for the administration of justice", can stay administrative proceedings. *Scripps-Howard Radio*, 316 U.S. at 9–10, 62 S.Ct. at 879–80. As justification, the court cited § 262 of the Judicial Code, 28 U.S.C. § 377, in a footnote stating that § 262,

> "empowers the federal courts to issue all writs which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

*Id.* at 10, 62 S.Ct. at 880.

Thus, the Supreme Court reasons, the power to stay administrative action is like the power to stay judicial action. In doing so, it supports the notion that to enjoin proceedings of another federal court is the same as enjoining proceedings in an administrative agency tribunal. When jurisdiction is obtained by one federal court, that court has the power to enjoin another federal court from exercising its jurisdiction over the subject matter and the parties. Therefore, since this court obtained jurisdiction first, I have the power to enjoin an administrative proceeding from exercising its jurisdiction over the subject matter and the parties.

My principal concern is to avoid a wasteful and useless duplication of time and effort. My secondary concern is to maintain integrity and coherence in the system. Here, the government has sought relief in this court. It has caused a considerable expenditure of judicial time and resources. It has triggered the court's duty to act. Accordingly, it is bound by its election. Should it be dissatisfied with the results obtained, the government's remedy is to appeal rather than commence administrative action.

I do not and would not enjoin the Drug Enforcement Administration from pursuing its statutory obligations. In fact the precise scope of its intended administrative action is not entirely clear. Nevertheless, revocation of Dr. Norton's license based upon any facts or actions either alleged in the complaint filed in this action or which could have been alleged or presented in evidence in this case would cause an interference with the properly exercised jurisdiction of this court.

I assume that such interference is not intended. Upon receipt of a copy of this injunction by the government, I am confidant it will not take place. Should my confidence be misplaced, the defendant is entitled to move for an injunction or seek such other relief in this court as he deems appropriate. The present alleged threat, however, is only anticipatory. It would be imprudent for a court to act on the basis that a possible confrontation might take place. The present motion by defendant is denied without prejudice.