**ESTEE LAUDER, INC., Plaintiff,**

v.

**DUN & BRADSTREET SOFTWARE SERVICES, INC., Geac Computer Systems, Inc. and Geac Computer Corporation, Limited, Defendants.**

No. 97 CV 6136(TCP).

United States District Court, E.D. New York.

Dec. 19, 1997.

Fredric W. Yerman, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for Estee Lauder, Inc.

Wayne Matus, Christy & Viener, New York City, for Geac Computer Corp., Ltd.

1. Jurisdiction of this action is predicated on diversity of citizenship, 28 U.S.C. § 1332.

2. On October 28, 1997, the State Court action was removed to the United States District Court for the Northern District of Georgia, Atlanta Division. That action is entitled, *Geac Computer Systems, Inc. v. Estee Lauder, Inc.*, No. 97 Civ. 3243 (N.D.Ga.1997) (Thrash, District Judge).

3. On November 17, 1997, Geac, as the plaintiff in the Georgia action, filed a motion to enjoin

## MEMORANDUM AND ORDER

PLATT, District Judge.

Estee Lauder filed this action against Dun & Bradstreet Software Services, Inc., Geac Computer Systems, Inc. and Geac Computer Corporation, Limited (collectively, "defendants") on October 24, 1997.[1] The defendants filed an earlier action on October 17, 1997 in the Georgia Superior Court.[2] On December 6, 1997, Estee Lauder moved pursuant to Federal Rule of Civil Procedure 65 to enjoin defendants from pursuing the action filed in Georgia on the ground that the Georgia lawsuit was anticipatory of the present action. Defendants cross-moved to stay this action pending the outcome of the previously-filed action contending that Estee Lauder's "claims in this action arise out of the same transaction that is the subject matter of the First Action [and] under Rule 13(a) ... they should be adjudicated as compulsory counterclaims in the First Action."[3] Defs.' Mem. at 4.

For the reasons set forth herein, plaintiff's motion to enjoin defendants from pursuing the Georgia action is denied and defendants' cross-motion to stay this action is granted, pending resolution by the Atlanta District Court of the issue raised herein.

## BACKGROUND

This action for rescission and breach of contract is based on the alleged failure of defendants' computer software. In 1993, Estee Lauder decided to upgrade its computer software system. Defendant Dun & Bradstreet Software Services, Inc. ("DBS") offered the "SmartStream" System which, according to plaintiff, DBS assured would fulfill Estee Lauder's needs.[4] Having decided to

Estee Lauder from prosecuting the New York action. Thereafter, on December 5, 1997, Estee Lauder submitted a motion to dismiss, stay or transfer the Georgia action to the Eastern District of New York. Both motions were submitted to District Judge Thomas W. Thrash on December 18, 1997 and are presently pending....

4. In November 1996, defendant Geac Computer Corporation purchased DBS and presently, DBS operates as a division of Geac.

purchase SmartStream, the parties entered into a License Agreement ("the Agreement") in November 1993, granting Estee Lauder the right to use the system. The Agreement contains a New York choice of law provision.

For several years, DBS labored to implement SmartStream at Estee Lauder's Melville facility. Then, plaintiff alleges, after Estee Lauder expended millions of dollars implementing SmartStream, DBS abandoned the project, leaving the system uncompleted and inoperable. Specifically, plaintiff alleges that defendants failed to: (1) deliver all of the system components; (2) integrate the system components already delivered; and (3) fix errors in the individual components. As a result, plaintiff claims, the SmartStream product delivered to plaintiff remains completely inoperative.

Beginning March 17, 1997 through October 15, 1997, Estee Lauder's outside counsel, Kaye Scholer, Fierman, Hays & Handler, LLP ("Kaye Scholer"), commenced a letter writing campaign with Geac's General Counsel to address and remedy the problems with the SmartStream System. In one such letter, plaintiff's counsel asserted that a claim was prepared and, unless the parties reached a settlement, Estee Lauder would file the Complaint. Thereafter, on October 15, 1997, the parties convened at a settlement meeting at Estee Lauder's offices in New York City. All parties were adequately represented by senior business officers as well as counsel. According to plaintiff, at no time during this meeting did Geac assert any claims against Estee Lauder. Although no agreement was reached at this conference, on October 16, 1997, Geac's General Counsel sent Kaye Scholer a letter apparently expressing a willingness to negotiate a settlement by addressing the terms of Estee Lauder's settlement offer. Geac's letter, which requested a response regarding the proposed settlement, indicated that Geac's General Counsel would be out of the office until October 23, 1997.

Hopes of an amicable resolution notwithstanding, on October 17, 1997, defendants, without notifying Estee Lauder, filed a Complaint against Estee Lauder in Fulton County, Georgia asserting, *inter alia,* claims for: (1) a declaratory judgment that defendants

performed all of their obligations under the License Agreement; and (2) unpaid monies under the License Agreement in the sum of $236,718. Plaintiff learned about the Georgia lawsuit from a local attorney who monitors the Fulton County calendar, although Estee Lauder's corporate agent in Delaware was not served with a copy of the Complaint until October 24, 1997. That same day, Estee Lauder commenced this action for rescission and breach of contract based upon the failure of the SmartStream computer system in the Eastern District of New York.

## DISCUSSION

Plaintiff describes this as "a classic case of gun-jumping, where an aggrieved party is lulled to delay filing its lawsuit by an offer of settlement discussions from the defendant only to have the defendant surreptitiously race to the courthouse so that it can file first in its preferred forum." Pl.'s Mem. at 1. Defendants, on the other hand, contend that this is a case of "a reluctant litigant . . . who sued second, now seeking to be treated as if it sued first." Defs.' Mem. at 1.

█ The rule in the Second Circuit is that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *Motion Picture Laboratory Technicians Local 780 v. McGregor & Werner,* 804 F.2d 16, 19 (2d Cir.1986) *quoting Fort Howard Paper Co. v. William D. Witter, Inc.* 787 F.2d 784, 790 (2d Cir.1986); *see also Factors etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *William Gluckin & Co. v. Int'l Playtex Corp.,* 407 F.2d 177, 178 (2d Cir.1969); *Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d 421, 423 (2d Cir.1965), *cert. dismissed,* 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966).

Estee Lauder contends that the filing of the Georgia action was in bad faith and in anticipation of Estee Lauder's commencing a lawsuit upon failure of settlement negotiations. Therefore, plaintiff urges, the issue

presented to this Court is whether there are "special circumstances" in this case to justify departure from the "first-filed" priority rule. *See, e.g., Factors etc., Inc. v. Pro Arts, Inc.,* 579 F.2d at 219; *Columbia Pictures Industries, Inc. v. Schneider,* 435 F.Supp. 742 (S.D.N.Y.1977), *aff'd,* 573 F.2d 1288 (2d Cir. 1978). However, because the "mirror image" of this motion presently is pending before the Atlanta District Court, this Court declines plaintiff's invitation to determine the issue. *See Donaldson, Lufkin & Jenrette v. Los Angeles County,* 542 F.Supp. 1317, 1320–21 (S.D.N.Y.1982). ("In effect, this court is being requested to rule on the 'mirror image' of the motion which was presented to the [first-filed] court. . . .").

■ The question of which court should determine the "special circumstances" question has not been addressed by many courts in this Circuit. Indeed, this Court was able to locate only one other case addressing the issue when identical motions are pending before both courts. *See Donaldson, supra.* "Under these circumstances, this Court is of the opinion that the district court hearing the first-filed action should determine whether special circumstances dictate that the first action should be dismissed in favor of a later filed action." *Id.* In discussing the rationale behind this determination, Judge Edelstein explained, "[a]bsent such a rule, there exists the possibility of inconsistent rulings on discretionary matters as well as duplication of judicial effort." *Id. citing Brierwood Shoe Corp. v. Sears, Roebuck & Co.,* 479 F.Supp. 563, 568 (S.D.N.Y.1979); *Columbia Pictures,* 435 F.Supp. at 748.

## CONCLUSION

Estee Lauder's motion to enjoin defendants from pursuing the Georgia action is denied, and defendants' cross-motion to stay this action is granted. This action hereby is stayed pending resolution of the "special circumstances" question by the Atlanta District Court.

SO ORDERED.